410 A.2d 806

**Mrs. Susan GROTTENTHALER, Appellant,**

**v.**

**PENNSYLVANIA STATE POLICE, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 26, 1979.

Decided Feb. 1, 1980.

Gary M. Lightman, Mancke & Lightman, Harrisburg, for appellant.

David H. Allshouse, Deputy Atty. Gen., Harrisburg, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

OPINION

NIX, Judge.

Appellant is the widow of a former Pennsylvania State Police Trooper who was stricken with Leukemia in March, 1976, and died as a result of that illness on September 22, 1976. Mrs. Grottenthaler instituted an action against the

Pennsylvania State Police in the Commonwealth Court, in the nature of mandamus, seeking payment of certain benefits claimed to be due as a result of her late husband's illness and death. 40 Pa.Cmwlth. 165, 398 A.2d 220 (1979). A divided Commonwealth Court denied the relief requested and an appeal was taken to this Court. 42 Pa.C.S.A. § 723(a).

The issues raised in this appeal are whether either an arbitration award of December 27, 1973 ("Gershenfeld Award"), or provisions of the collective bargaining agreements for the subsequent years, granted Mrs. Grottenthaler a right to the requested benefits. The Commonwealth Court found that her right to recovery was barred by the provisions of the State Retirement Code (Code), 71 Pa.C.S.A. § 5101 et seq. (Supp.1978–79), sustained a preliminary objection filed by appellee and dismissed the action. For the reasons that follow, we conclude that the Code does not preclude the relief sought and that the action must be reinstated.

The Act of June 24, 1968, P.L. 237, 43 P.S. § 217.1 et seq. (Act III) granted for the first time in this jurisdiction collective bargaining rights for policemen or firemen employed by a political subdivision of the Commonwealth or by the Commonwealth. Section 1 of Act III provided, inter alia, the right to bargain collectively "concerning the terms and conditions of their employment, including  . . . , retirement, pensions and other benefits,  . . . ." In addition, Section 1 of Act III stated that disputes or grievances were to be adjusted or settled by way or arbitration. In 1973, pursuant to Act III, the Fraternal Order of Police, the bargaining representative for the Pennsylvania State Troopers entered into arbitration with the Commonwealth over a contract dispute. As a result, the Gershenfeld Award dated December 27, 1973, was entered over the dissent of the Commonwealth Arbitrator. See 1968, June 24, P.L. 237, No. 111, § 4(b); 43 P.S. § 217.4(b) (Supp.1978–79). That award provided in pertinent part:

### 14. Non-service-connected Disability Benefits

The Board of Arbitration awards a disability benefit of 70% of final average salary (as presently calculated for disability purposes) to officers who are totally and permanently disabled as the result of non-service-connected disability. The disability must be one which disqualifies the officer from the performance of any gainful employment. Pension benefits for such officers shall be provided on the same basis as those granted officers in connection with total and permanent service-connected disability. Other non-service-connected disability is to continue to be compensated as at present. Commonwealth Arbitrator dissents.

### 15. Survivor Benefits

If an officer dies, and his death is non-service connected, his family shall receive benefits on the basis of 50% of final average salary (as presently calculated for disability purposes). Commonwealth Arbitrator dissents.

The award specifically limited the direction of its applicability in its opening paragraph: "All items are effective July 1, 1974, the term of this Award is for one year expiring June 30, 1975."

After the filing of the Gershenfeld Award, but prior to July 1, 1974, the legislature passed and made effective the Code. A provision of the Code, 71 Pa.C.S.A. § 5955 (Supp. 1978–79) provided:

"Construction of part.

Pension rights of State employees shall be determined solely by this part or any amendment thereto, and no collective bargaining agreement between the Commonwealth and its employees shall be construed to change any of the provisions herein. The provisions of this part insofar as they are the same as those of the existing law are intended as a continuation of such laws and not as new enactments. The provisions of this part shall not affect any act done, liability incurred, right accrued or

vested, or any suit or prosecution pending or to be instituted to enforce any right or penalty or to punish any offense under the authority of any repealed laws." [1]

■ Appellant's first contention is that her entitlement to the benefits flows from the Gershenfeld Award. She argues that the language of Section 5955, which provides that the new provisions of the Code "shall not affect any act done, liability incurred, right accrued or vested" prevents the Code from barring her right of recover. The Commonwealth Court was unanimous in its rejection of her claim for relief based upon the 1973 arbitration award, and its unanimity in this regard is readily understood. [2] By its terms, the Gershenfeld Award was limited to the contract year of 1974–75. Trooper Grottenthaler's illness was not contracted until March of 1976, and his death did not occur until September of that year. Regardless of whatever vitality the Gershenfeld Award may have had in the year it was intended to apply, appellant has failed to provide any basis for finding that her right to the award "vested" for an illness and death occurring in 1976. [3] The provisions of the award do not provide the slightest suggestion that the benefits to be conferred thereunder were to be vested in an employee or his beneficiary, where the non-service-connected illness causing the disability and/or death occurred beyond the designated year.

■ Appellant's alternative theory is more persuasive. She claims entitlement under the provisions of the bargaining agreements in effect at the time of her husband's illness

1. We will refer to this provision of the Code as Section 5955.

2. Judge Craig, in his dissenting opinion joined by Judge Crumlish, acknowledged "that the effect of the 1973 arbitration award, . . ., is not involved here . . . ." 40 Pa.Cmwlth. at 170, 398 A.2d at 223.

3. Appellant's arguments in this regard have been focused upon establishing that Section 5955 did not diminish or negate the mandate of the Gershenfeld Award. She failed to present any reason why her deceased husband's beneficiaries are entitled to the benefit of an award that by its terms expired before the critical events (i. e. his illness and death) occurred.

and death. The collective bargaining agreements negotiated for the fiscal years 1975–76 and 1976–77 incorporated by reference items 14 and 15 of the Gershenfeld Award. The legislature appropriated funding for these benefits for the fiscal year 1976–77.[4] Payments were withheld under these contract provisions by the Commissioner of the Pennsylvania State Police on reliance upon an opinion of the Attorney General issued on June 30, 1977. Attorney General No. 77–11 (1977). Appellant's right to the benefits under the terms of the collective bargaining agreement is dependent upon the effect of Section 5955 on these terms of the agreement.

The appellees have stressed the invalidity of the arbitration award. As we have indicated, this is not a critical issue in this appeal since we are satisfied that accepting the validity of the award it did not, under its express terms, purport to confer non-service-connected disability and death benefits beyond the fiscal year July, 1974 to June, 1975. Further, it is equally clear that the purport of Section 5955 was to remove as a bargainable item under the provision of Act III matters relating to pension rights of State employees.[5] We also agree with appellee's position that if appellant's claim was dependent upon an arbitration award entered in violation of Section 5955, she could not prevail. *Washington Arbitration Case,* 436 Pa. 168, 259 A.2d 437 (1969). (Arbitration panels may not mandate that a governing body carry out an illegal act.)

4. No legislation concerning the funding of the award was passed prior to the effective date of Section 5955. In 1976, after a mandamus action had been instituted by appellant against the General Assembly, *Grottenthaler v. General Assembly, Commonwealth of Pennsylvania,* No. 1833 C.D.1976; the legislature passed the Supplemental Appropriations Act of 1976 (Act 55–A) which provided in pertinent part: "To the Pennsylvania State Police [f]or the payment of nonservice connected disability benefits and nonservice connected death benefits pursuant to the Greshenfeld [sic] Awards but payable only for fiscal year 1976–77 . . . [$80,000.00]."

5. The dissenters in the Commonwealth Court suggested the possibility of a distinction between the "pension rights" referred to in § 5955 of the Code and the benefits provided for in the bargaining agreement. In view of our disposition, we need not consider this question.

The difficult question raised in this appeal, and not directly addressed either by the majority of the Commonwealth Court or appellees, is whether the Commonwealth is to be permitted to ignore its own mandate to secure an advantage in the bargaining process and then escape liability thereunder by asserting the illegality of the provision. We think not. We are well aware of the State's interest in the actuarial soundness of the retirement system provided for its employees,[6] but we also recognize that the integrity of the bargaining process in the public sector is of equal importance.

The problem presented in this appeal is analogous to that faced in *Pittsburgh Joint Collective Bargaining Committee v. City of Pittsburgh* (Joint Bargaining) 481 Pa. 66, 391 A.2d 1318 (1978). In *Joint Bargaining,* we held that a municipality could not avoid the effect of a term of the collective bargaining agreement it had entered into, by asserting that the contract provision was in violation of State law.[7] In reaching the result, after stressing the importance of the development and maintenance of harmonious relationships between the public, employer and employee, we observed:

To permit an employer to enter into agreements and include terms . . . which raise the expectations of those concerned, and then to subsequently refuse to abide by those provisions on the basis of its lack of capacity would invite discord and distrust and create an atmosphere wherein a harmonious relationship would virtually be impossible to maintain.

Good faith bargaining would require that questions as to the legality of the proposed terms of a collective bargaining agreement should be resolved by the parties to the agreement at the bargaining stage. (Footnote omit-

**6.** Since a special appropriation was made for the payments of these benefits for the fiscal year 1976–77, there would be little, if any, impact upon the Retirement Fund if appellant is successful in her action.

**7.** The city had contended that the discharge was not an arbitrable issue since it was within the exclusive jurisdiction of the Civil Service Commission of the City of Pittsburgh.

ted) *Pittsburgh Joint Collective Bargaining Committee v. City of Pittsburgh,* supra at 481 Pa. 74–75, 391 A.2d 1322–23. See also *Ambridge Borough Water Authority v. Columbia,* 458 Pa. 546, 328 A.2d 498 (1974).

The facts in this appeal are even more compelling than those in *Joint Bargaining.* In *Joint Bargaining,* the municipality was unquestionably bound to follow the mandate of the statutes they contended were in conflict with the disputed terms of the bargaining agreement. We were thus required in that case to apply an estoppel concept to meet the municipality's attempt to avoid the consequences of its agreement. *Id.,* 481 Pa. at 75, n.11, 391 A.2d at 1323, n.11. Here the employer is the Commonwealth. The prohibition set forth in Section 5955 is not constitutionally mandated by either the state or federal constitutions. Section 5955 merely represents an exercise of legislative judgment. To permit the Commonwealth to ignore its mandate with impunity in two successive bargaining contracts following the promulgation of Section 5955, and then to assert it as a bar to a claim for recovery under the bargaining agreement would be manifestly unfair.[8] The demoralizing effect of such a result on the relationship between employer and employee in the public sector is readily apparent. We are, therefore, compelled to conclude that the inclusion of these benefits in the collective bargaining contracts following the passage of Section 5955 constituted an express waiver of any bar Section 5955 may otherwise have posed to a recovery for those years.[9]

8. In his dissenting opinion, Judge Craig stated, "The Commonwealth should not be permitted to take away by one hand a right which the other hand has given." 40 Pa.Cmwlth. at 171, 398 A.2d at 224.

9. Appellant also argued that the appropriation funding conferred the right to the benefits. We reject this argument, appropriation measures do not confer substantive rights but rather implement substantive enactments and existing programs. See e. g. *T.V.A. v. Hill,* 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978).

"We recognize that both substantive enactments and appropriations measures are 'Acts of Congress,' but the latter have the limited and specific purpose of providing funds for authorized programs. When voting on appropriations measures, legislators

Accordingly, we reverse the order of the Commonwealth Court sustaining the preliminary objections and direct the action to be reinstated.[10]   The cause is remanded for further proceedings consistent herewith.

MANDERINO, J., did not participate in the decision of this case.

are entitled to operate under the assumption that the funds will be devoted to purposes which are lawful and not for any purpose forbidden.    Without such an assurance, every appropriations measure would be pregnant with prospects of altering substantive legislation, repealing by implication any prior statute which might prohibit the expenditure. . . .   this led to the absurd result of requiring Members to review exhaustively the background of every authorization before voting on an appropriation, . . . ." Id. at 190, 98 S.Ct. at 2299–2300.
Unlike the legislature's responsibility in passing appropriation measures state officials bargaining on behalf of the Commonwealth are expected to be aware of those matters that have been legislatively determined to be not proper subjects for negotiations.

10.   Appellees have raised before the Commonwealth Court and this Court the argument that appellant has failed to join indispensable parties under Pa.R.C.P.No.1032(2).   The Commonwealth Court did not reach this issue and we will not consider it at this time.   The appellee is at liberty to press this position before the court below on remand.