522 A.2d 136

State Conference of State Police Lodges of the Fraternal Order of Police, by its Trustee Ad Litem, Paul T. McCommons, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

448

Argued September 8, 1986, before Judges CRAIG and DOYLE, and Senior Judge BLATT, sitting as a panel of three.

*Gary M. Lightman,* with him, *Anthony C. Busillo, II, Mancke, Lightman & Wagner,* for petitioner.

*Susan J. Forney,* Senior Deputy Attorney General, with her, *Andrew S. Gordon,* Chief Deputy Attorney General, Chief, Litigation Section, and *LeRoy S. Zimmerman,* Attorney General, for respondent.

OPINION BY JUDGE CRAIG, March 9, 1987:

The State Conference of State Police Lodges of the Fraternal Order of Police (FOP) filed a petition for review in the nature of a declaratory judgment, asking that this court exercise its original jurisdiction to declare section 5955 of the State Employees' Retirement Code[1] unconstitutional. The Commonwealth filed preliminary objections in the nature of a demurrer to the FOP's petition for review.

According to the averments of the petition, the FOP is the certified bargaining representative for the state police. The FOP asked the Commonwealth to bargain over state police pension benefits, pursuant to the Act of June 24, 1968, P.L. 237, 43 P.S. §§217.1-217.27 (Act 111). The Commonwealth refused even to discuss pensions in bargaining with the FOP on the ground that section 5955 of the Retirement Code allegedly prohibits bargaining over such matters. Section 5955 of the Retirement Code provides:

---

[1] Act of March 1, 1974, P.L. 125, 71 Pa. C. S. §5955.

Pension rights of state employees shall be determined solely by this part or any amendment thereto, and no collective bargaining agreement between the Commonwealth and its employees shall be construed to change any of the provisions herein. The provisions of this part insofar as they are the same as those of existing law are intended as a continuation of such laws and not as new enactments. The provisions of this part shall not affect any act done, liability incurred, right accrued or vested, or any suit or prosecution pending or to be instituted to enforce any right or penalty or to punish any offense under the authority of any repealed laws.

71 Pa. C. S. §5955.

The FOP's contentions concerning section 5955 are that, reading the section to prohibit dealing with pensions in the collective bargaining process and also to prevent binding arbitration from mandating pension legislation, then (1) the section is invalid as a special law regulating labor in violation of art. III, §32(7) of the Pennsylvania Constitution[2] and (2) the section conflicts with art. III, §31 of the Pennsylvania Constitution[3]

_____

[2] The pertinent portion of Pa. Const. art. III, §32(7) reads: The General Assembly shall pass no local or special law in any case which has been or can be provided for by general law and specifically the General Assembly shall not pass any local or special law:

. . . .

7. Regulating labor, trade, mining or manufacturing. . . .

[3] Art. III, §31 of the Pennsylvania Constitution reads, in part: The General Assembly may enact laws which provide that the findings of panels or commissions, selected and acting in accordance with law for the adjustment or settlement of grievances or disputes or for collective bargaining between policemen and firemen and the public employers shall be binding upon all parties and shall constitute a mandate to

which provides that statutory labor arbitration for police, as has been adopted by the legislature in Act 111,[4] shall constitute a mandate for legislative action necessary to implement an award.

The state counters (1) that considerations of predictability, and concerns for uniform treatment of all state

the head of the political subdivision which is the employer, or the appropriate officer of the Commonwealth if the Commonwealth is the employer, with respect to matters which can be remedied by administrative action, and to the lawmaking body of such political subdivision or of the Commonwealth, with respect to matters which require legislative action, to take the action necessary to carry out such findings.

[4] Section 1 of Act 111 provides:

Policemen or firemen employed by a political subdivision of the Commonwealth or by the Commonwealth shall . . . have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits. . . .

43 P.S. §217.1

Section 4 of Act 111, 43 P.S. §217.4, authorizes the appointment of an arbitration board in the event of an impasse in bargaining. Tracking the language of art. III, §31 of the Constitution, section 7 of Act 111 implements the constitutional provision for giving arbitration awards precedence over legislation by providing:

(a) The determination of the majority of the board of arbitration thus established shall be final on the issue or issues in dispute and shall be binding upon the public employer and the policemen or firemen involved. . . . No appeal therefrom shall be allowed to any court. Such determination shall constitute a mandate to the head of the political subdivision which is the employer, or to the appropriate officer of the Commonwealth if the Commonwealth is the employer, with respect to matters which can be remedied by administrative action, and to the lawmaking body of such political subdivision or of the Commonwealth with respect to matters which require legislative action, to take the action necessary to carry out the determination of the board of arbitration.

employees, establish a rational basis for treating the state police as a class different from municipal police, and (2) that section 5955 of the Retirement Code expressly effected a partial repeal of the earlier Act 111, which had conferred collective bargaining and binding arbitration upon policemen and firemen, and accordingly is not invalid as negating the effect which the state constitution has conferred upon such arbitration when provided by statute.

### What Does Retirement Code §5955 Say?

Before considering the validity of section 5955, we must read it to see what meaning its words possess.

In accordance with the axiomatic statutory construction principle which gives effect to the plain meaning of unambiguous statutory language, codified in 1 Pa. C. S. §1921(b), a straightforward reading of section 5955 reveals that it simply does not contain any words which prohibit discussion and bargaining over pensions between the state and its employees in the course of the collective bargaining process. It merely states that pension rights of state employees "shall be determined solely" by the Retirement Code and its amendments, and that "no collective bargaining *agreement* . . . shall be construed to change any of the provisions" of the Retirement Code. (Emphasis added.) Those unambiguous words provide only that pension rights and the relationships of state employees are to be embodied in the statute as the source and enforcement basis for those rights, rather than in any collective bargaining agreement; in other words, the legal vehicle documenting pension entitlement is to be the law itself, not a contract.

Limiting the legal vehicle within which pension rights are to be embodied obviously does not prohibit discussion and bargaining between the parties concern-

ing the subject of pensions because, subsequent to bargaining, a mutually accepted result can then be embodied in statute by amendment, subject to enactment of the same by the legislature. There is nothing novel in that approach. For many years before the enactment of specific statutory authorization for collective bargaining by public employees, as in Act 111, state and municipal employees traditionally dealt with their governmental employers on many subjects affecting their working conditions—matters subjects such as tenure and pensions—with a view toward the possible amendment of the controlling statutes and ordinances to reflect the newly acceptable status between the parties.

The Pennsylvania Constitution itself provides irrefutable authority recognizing the concept of statutory embodiment of public employee collective bargaining results, in place of contractual embodiment. The very state constitutional provision which authorizes binding arbitration for police and firefighters, art. III, §31, expressly recognizes that there can be binding arbitration findings "with respect to matters which require legislative action," and "if the Commonwealth is the employer," that section requires "the lawmaking body of . . . the Commonwealth," concerning those matters, "to take the action necessary to carry out such findings."

That constitutional recognition of primacy of statutory law as the embodiment of certain public employee rights and benefits is matched by the completely consistent approach of Retirement Code §5955, at issue here, when it states that pension rights shall be determined solely by the Retirement Code, and that no collective bargaining agreement shall be construed to change any of the Retirement Code provisions. The latter point constitutes the very premise of the constitutional provision—that no agreement formulated by the parties can itself effectuate any change in statutory law. For that

purpose, the constitution supplies an arbitration mechanism which can bind the legislature to act if consensus between state and employees does not produce an amendment of the law.

Now, pursuant to that constitutional authorization, we have Act 111 providing collective bargaining and binding arbitration for police and firemen in lieu of a right to strike. And a considerable range of statutes has continued to embody the pension relationships of municipal police; for example, with respect to police in third class cities, the Third Class City Code of June 23, 1931, P.L. 932, *as amended*, §§4301-4308, 53 P.S. §§39301-39308, covers pension elements. Similarly, municipal codes and other laws contain many provisions concerning state and local police tenure in their jobs and other working conditions.[5] The fact that statutes deal with those conditions—as is common if not inevitable with respect to public employment—in no way bars discussion of such subjects as employees and employer communicate with each other in the collective bargaining process. State laws and municipal ordinances have long provided for, and still cover, matters affecting employment such as, working hours, vacations and holidays.[6]

The existence of a substantive statute has never in itself negated public employer-employee bargaining over a matter covered by the statute. For example, the

_____

[5] As to state police tenure—including dismissal, maximum age and probationary service provisions—*see* section 205 of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. §65. As to police and firefighters' tenure in boroughs, for example, *see* sections 1171-1195 of The Borough Code, Act of February 1, 1966, P.L. (1965) 1656, 53 P.S. §46171-46195.

[6] As to state police minimum vacation and off-duty periods, *see* the Act of June 29, 1937, P.L. 2420, §1, *as amended*, 71 P.S. §254.

collective bargaining process at the municipal level is subject to controlling state statutes, but the existence of state statutes concerning any given subject does not oust that subject from discussion or the collective bargaining process. In *City of Washington v. Police Department of Washington,* 436 Pa. 168, 259 A.2d 437 (1969), the Pennsylvania Supreme Court held that an arbitration award under Act 111 could not mandate benefit payments by a city contrary to the Third Class City Code. Although section 7 of Act 111, 43 P.S. §217.7, provides that binding arbitration for municipal police can mandate legislative action by a municipal governing body in the form of *ordinance* changes, it cannot mandate action which would contravene the will of the state legislature, as embodied in *statutes* governing a city. Nevertheless, there was no judicial intimation that negotiations by local police with their cities concerning subjects limited by state statute are forbidden.

Here the state appears to insist that even discussion of pensions in the bargaining process is forbidden, by referring to section 2(d), in the repealer portion of the Retirement Code. As it appears in the pamphlet laws, the pertinent part of section 2(d) states:

> The following acts are repealed insofar as inconsistent with the provisions of section 5955 (relating to construction of part):
>
> Act of June 24, 1968 (P.L. 237, No. 111), entitled 'an act specifically authorizing collective bargaining between policemen and firemen and their public employers; providing for arbitration in order to settle disputes and requiring compliance with collective bargaining agreements and findings of arbitrators.'

The state brief attributes the phrase "relating to construction of part" to the Legislative Reference Bureau, noting from that bureau's footnote in the pamphlet

laws that the parenthetical original phrase in the enacted bill contained the words "relating to prohibition of collective bargaining on subject matter." However, such a peripheral reference is subject to Legislative Reference Bureau editing and therefore cannot be regarded as an authoritative statement of legislative intention prevailing over the plain language of the terms of section 5955 itself. Under 1 Pa. C. S. §1105(d)(3), the Legislative Reference Bureau, without obtaining approvals from officials of the legislature, is empowered to:

(3) Insert or change instructions and references in sections of amendatory statutes to conform to the provisions amended or affected.

A parenthetical cross-reference, of the sort noted above, constitutes one of the "summary analyses" or "cross reference descriptions" listed in 1 Pa. C. S. §1101(b) as among unofficial provisions which "shall not constitute part of the law. . . ." The Legislative Reference Bureau's power to "correct" such provisions, captioned as "unofficial" in 1 Pa. C. S. §1101, appears in 1 Pa. C. S. §1105 (c).

The state brief also places reliance upon a footnote in *Guthrie v. Borough of Wilkinsburg*, 508 Pa. 590, 596 n. 3, 499 A.2d 570, 573 n. 3 (1985), in which the Supreme Court referred to section 1 of Act 111 as follows:

3. This section was repealed in part in so far as it is inconsistent with 71 Pa. C.S.A. §5955 relating to prohibition of collective bargaining concerning pension rights of Commonwealth employees.

However, in *Guthrie*, the Supreme Court's holding was to give effect to an arbitration award of increased pay for police performing detective duties, as not contravening police civil service statutes. The scope of any implied repeal of Act 111 by section 5955 was not directly involved and not necessary to the decision in the case.

The state's reliance upon *Grottenthaler v. Pennsylvania State Police*, 488 Pa. 19, 24, 410 A.2d 806, 808 (1980), is similarly misplaced. Although the Supreme Court, at the page cited, did state that the purport of section 5955 was to remove matters relating to pension rights "as a bargainable item" under Act 111, the right to discuss pensions in bargaining was not at all at issue in *Grottenthaler*.

Section 5955 clearly prohibits the parties from embodying any pension matter changes in a collective bargaining agreement contrary to statute, but there is a repugnant aspect to the view that the parties in collective bargaining must keep their lips sealed from mentioning pension matters or the possibility of changing, by due legislative process, what the Retirement Code currently provides.

Accordingly, for the purpose of considering the validity of section 5955, we conclude that the effect of that section is just what it says:

(1) Pension rights of State employees shall be determined solely by the Retirement Code or any amendment to it; and

(2) No agreement shall be construed to change any of the provisions of that Code.

Because that section contains no prohibition against discussing or bargaining concerning state employee pension matters, there is no inconsistency between it and the collective bargaining process authorization in section 1 of Act 111, and hence no implied amendment or partial repeal of the latter by the former. Because the Retirement Code, in confirming the primacy of the statute, does not forbid bargaining, Act 111's "right to bargain collectively . . . concerning pensions" remains intact.

Accordingly, with the state police's right to bargain not divested as to pensions, there can be no discrimination against them in that respect.

Logically, the next inquiry must be whether Retirement Code section 5955 negates for state police the constitutionally authorized effect of binding arbitration in section 7 of Act 111, and thereby sets state officers apart from other police.

*Does Retirement Code §5955 Negate the Constitutionally Authorized Binding Effect of Act 111 Arbitration upon Legislation?*

As the Pennsylvania Supreme Court noted in *Harney v. Russo,* 435 Pa. 183, 255 A.2d 560 (1969), the obvious legislative policy of Act 111 was to protect the public from strikes by police officers and firefighters as public employees in critical safety positions. Because the Act of June 30, 1947, P.L. 1183, §§1-5, 43 P.S. §§215.1-215.5, prohibiting strikes by public employees, remains applicable to public employees not covered by the Public Employe Relations Act (PERA), police and firefighters remain barred from the privilege of striking in the event of a bargaining impasse. Section 301(2) of PERA, Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §1101.301(2), excludes police and firefighters from its coverage, and PERA's repealer section 2201, 43 P.S. §1101.2201, leaves the no-strike law in place as to them.

Logic therefore supplies a bar to viewing the uniformed public safety employees as being stripped of the arbitration *quid pro quo,* when the strike alternative remains unavailable to them.

When the Retirement Code section 5955 says that state employee pension rights shall be determined solely by it and that a collective bargaining agreement cannot change it, it offers no basis for reading into it an unspoken deletion of the strong language in section 7 of Act 211, 43 P.S. §217.7, providing in subsection (a) that the arbitration determination shall constitute a "mandate . . . to the lawmaking body of . . . the Common-

wealth with respect to matters which require legislative action, to take the action necessary to carry out the determination of the board of arbitration." Subsection (b) of the same section adds a temporal urgency emphasis to the mandate by providing:

(b) With respect to matters which require legislative action for implementation, such legislation shall be enacted, in the case of the Commonwealth, within six months following publication of the findings. . . . The effective date of any such legislation shall be the first day of the fiscal year following the fiscal year during which the legislation is thus enacted.

Because the Retirement Code nowhere provides any footing for the theory that its embodiment of pension benefits constitutes it a vessel immune to the binding effect of arbitration authorized by art. 3, §31 of the Pennsylvania Constitution, section 5955 of the Retirement Code effects no discrimination against state police in contrast to municipal police, and is therefore not in that respect a special law or a denial of equal protection.

## Is the Retirement Code Otherwise Invalid as a Special Law Regulating Labor?

Because the Retirement Code section in question effects no discrimination against state police with respect to collective bargaining as to pensions or as to binding arbitration concerning pension legislation, there remains only the question of whether it is invalid as a special law regulating labor simply because it governs state police pensions in a statute separate from the enabling acts and ordinances which govern other police pensions, such as those of municipal police.

Of course, the prohibition of special laws in art. III, §32(7) of the Constitution does not prohibit the creation of statutory classifications which have a rational relation-

ship to a proper public purpose. *Tosto v. Pennsylvania Nursing Home Loan Agency,* 460 Pa. 1, 14, 331 A.2d 198, 204 (1975). Because there can be no dispute as to the proposition that state police pension entitlement may differ in terms and amount from that which is provided for municipal police—just as like differences exist among the various enabling statutes and codes affecting different classifications of municipalities and also among municipalities of the same class—there can be little doubt but that it is a rational classification for the legislature to provide that state police pensions shall be governed by a statute which deals with state employees rather than municipal employees.

## Conclusion

Because Retirement Code section 5955, interpreted in accordance with its plain terms, suffers from no constitutional infirmity, the petition for review presents no cause of action for a declaratory judgment invalidating that section, and the Commonwealth's preliminary objections therefore should be sustained.

### ORDER

Now, March 9, 1987, the preliminary objections of the Commonwealth respondents are sustained and the action is dismissed.

CONCURRING OPINION BY JUDGE DOYLE:

I concur in the result only. While I agree with the result that the preliminary objections must be sustained, I would employ so vastly different an analysis that it is the equivalent of a dissent on the much more substantive issue of the bargainability of pension benefits for state police officers. My concurring views

would, in effect, have the exact opposite effect as that reached by the majority. I would hold that the subject of pension benefits is not one which is subject to bargaining between the Commonwealth and the Fraternal Order of Police (FOP).

I begin my trek from the same point of embarkation as does the majority, Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa. C. S. §1921(b), which states: "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Reading the exact words of Section 5955 of the State Employees' Retirement Code (Code), 71 Pa. C. S. §5955, nothing can be more clear than that state employees, including the state police, will be provided their retirement benefits solely in accordance with the provisions of the Code, "and no collective bargaining agreement between the Commonwealth and its employees shall be construed to change any of the provisions [therein]." 71 Pa. C. S. §5955. To conclude that these words do not prohibit "discussions and bargaining over pensions between the state and its employees in the course of the collective bargaining process" is, in my view, pure sophistry. What vehicle would embody the formalized resolution of the parties "discussion and bargaining"? Only two vehicles are available, the first being the *collective bargaining agreement* itself, which by Section 5955 of the Code, shall not be construed to change the provisions of the Code, nor by necessary implication, *mandate* a change in the Code. A Court should not permit something to be done by indirection what a statute has directly forbidden. *See Michel v. City of Bethlehem,* 84 Pa. Commonwealth Ct. 43, 478 A.2d 164 (1984). To somehow otherwise suggest, as the majority might seem to imply, that a mutually accepted result of the bargaining

process can be embodied by an amendment to the Code *without* having first been reduced to a written understanding in the collective bargaining agreement itself, I submit, is absolutely unworkable, would defy satisfactory resolution in the grinder of the legislative process, and would tempt chaos. On the other hand, there is nothing in the Code which now prohibits the FOP as the representative of the state police from effectuating a change in their retirement benefits *without* going through the bargaining process to achieve the desired legislative result.[1]

The other vehicle for resolution of the pension benefit issue between the parties, if not resolved by and embodied in the collective bargaining agreement, would be by submission of the issue to binding arbitration pursuant to Section 4 of the Act of June 24, 1968 (Act 111), P. L. 237, *as amended,* 43 P.S. §217.4. This could only arise, however, if the bargaining process had reached an impasse or if the appropriate lawmaking body, here the Commonwealth, would not approve the agreement reached by the parties. However, it is now undisputed that arbitration panels may not mandate that a governing body carry out an illegal act contrary to an act of the legislature, *Washington Arbitration Case,* 436 Pa. 168, 259 A.2d 437 (1969), and this principle should be as applicable to the Commonwealth government as it is to local municipal governments. The Supreme Court addressed this issue, albeit in dictum, in *Grottenthaler*

---

[1] Special provisions for state police and enforcement officers are written into the Code at Section 5102 under the definition of "Superannuation Age" (generally age 60 or any age upon accrual of 35 eligibility points, "except for a member of the General Assembly, an enforcement officer, a correction officer, a psychiatric security aide or an officer of the Pennsylvania State Police, age 50."), and at Section 5308(c) relating to special treatment for disability pension benefits. *See* 71 Pa. C. S. §5308(c).

*v. Pennsylvania State Police,* 488 Pa. 19, 410 A.2d 806 (1980), when the Court stated, "[w]e also agree with [the Pennsylvania State Police's position] that if Appellant's claim was dependent upon an arbitration award entered in violation of Section 5955, she would not prevail." *Id.* at 24, 410 A.2d at 808-09. The decision of the Court in *Grottenthaler* did allow the widow of a deceased state police officer to recover death benefits, but the Court's holding was based on principles of estoppel under the doctrine of *Pittsburgh Joint Collective Bargaining Committee v. City of Pittsburgh,* 481 Pa. 66, 391 A.2d 1318 (1978), and not on the basis of an arbitration award.[2] Furthermore, to invite resolution *only* by binding arbitration is to foreclose to the parties an amicable resolution by agreement.

As the majority correctly recognizes, Section 2(d) of the Act of March 1, 1974, P.L. 125, No. 31 (which is the repealer Section appearing in the pamphlet laws) provides that Act 111 is repealed insofar as it is inconsistent

---

[2] The Supreme Court in reversing the decision of this Court in *Grottenthaler v. Pennsylvania State Police,* 488 Pa. 19, 410 A.2d 806 (1980), while not adopting part of the rationale of the dissent, agreed with the *result* that would have been reached by the dissenting opinion and, by necessary *implication,* with the principle that the "Commonwealth should not be permitted *to take away* by one hand a right which the other hand has given." *Grottenthaler,* 488 Pa. at 26 n.8, 410 A.2d at 809 n.8 (quoting *Grottenthaler v. Pennsylvania State Police,* 40 Pa. Commonwealth Ct. 165, 171, 398 A.2d 220, 224 (1979)) (CRAIG, J., dissenting) (emphasis added). To reach this conclusion Judge CRAIG in the dissent postulated that "in order to give any effect to the appropriation act we must deem the death benefit to be not within the class of 'pension rights' *which the Code removes from the sphere of collective bargaining agreements,* at least for the period in question." *Grottenthaler,* 40 Pa. Commonwealth Ct. at 171, 398 A.2d at 224. (CRAIG, J. dissenting) (emphasis added). Therefore, the Supreme Court *had* to assume that pension benefits were precluded from the bargaining process in order to reach the result it did, whichever rationale was used.

with Section 5955. The majority holds, however, that the parenthetical information which appeared in the act originally is a "peripheral reference subject to Legislative Reference Bureau editing and therefore cannot be regarded as an authoritative statement of the legislative intention prevailing over the plain language of the terms of Section 5955 itself." While I am not certain that I would accept the majority's characterization of the original parenthetical information as a summary analysis or cross-reference description, that issue need not be resolved because the legislature, by including Act 111 within the repealer provision, clearly saw a conflict between the two statutes. The subject matter of that conflict *has* to be pension and retirement matters since the Code does not deal with the other subjects which are specifically bargainable under Act 111 (*i.e.*, compensation, hours, working conditions). Furthermore, Section 2(a) of Act 31, which created the Code, specifically repealed absolutely, the Act of June 29, 1937, P.L. 2423, No. 453, which first established the Pennsylvania State Police Retirement System.

In addition, while I agree with the majority that the Pennsylvania Supreme Court's holdings in *Guthrie v. Borough of Wilkinsburg*, 508 Pa. 590, 499 A.2d 570 (1985) and *Grottenthaler* did not dispose of the issue presented to us now, and that the statements in those cases that Section 1 of Act 111 was repealed insofar as it was inconsistent with Section 5955 of the Code, were dicta, I nonetheless think that these statements are entitled to be given at least persuasive weight by this Court. When the Supreme Court in *Grottenthaler* stated, "it is equally clear that the purport of Section 5955 was to remove as a bargainable item under the provisions of Act 111, matters relating to pension rights of state employees," *Grottenthaler*, 488 Pa. at 24, 410

A.2d at 808, the Supreme Court was doing more than engaging in meaningless discussion, but was expressing its view of the clear meaning of Section 5955 under the instruction of Section 1921(b) of the Statutory Construction Act.

I would, therefore, hold that Section 5955 does constitute a repeal of the right to bargain for pension benefits as set forth in Section 1 of Act 111 which originally granted the state police "the right to bargain collectively with their public employers concerning . . . pensions. . . ." 43 P.S. §217.1.

### Constitutionality Under Article III, Section 31 of the Pennsylvania Constitution

Having concluded that Section 5955 does constitute a repeal of the right to bargain over pension benefits, the question then becomes whether the withdrawal of that right is violative of Article III, Section 31 of the Pennsylvania Constitution, which provides for labor arbitration, or is constitutionally permissible. I would hold that it is constitutionally permissible. Article III, Section 31 of the Constitution permits, but does not require, the legislature to enact laws establishing binding arbitration for police officers. This provision does not grant police a constitutional right to collective bargaining; it merely authorizes the legislature to create such a right if it wishes. Additionally, the scope of substantive issues which can be the subject of such mandatory bargaining is not set forth in the Constitution and is, hence, left to the legislature. Admittedly, the legislature passed Act 111, creating a right for policemen and firemen to bargain over pension matters. But, absent a constitutional prohibition that, as just demonstrated, is not present here, what the legislature giveth, it can also taketh away.

### CONSTITUTIONALITY UNDER ARTICLE III, SECTION 32(7) OF THE PENNSYLVANIA CONSTITUTION

With respect to the objection raising the question of whether Section 5955 of the Code constitutes a special law in violation of Article III, Section 32(7) of the Pennsylvania Constitution, as applied to the state police, the majority concludes that because application of Section 5955 to the state police is not discriminatory, it is not a special law. While I agree that application of the Code to the state police is not discriminatory, I would resolve the question by holding that Section 5955 embodies a statutory classification that is permissible because it has a rational relationship to a proper state purpose. *See Tosto v. Pennsylvania Nursing Home Loan Agency,* 460 Pa. 1, 14, 331 A.2d 198, 204 (1975). This rational relationship is evident when one recognizes that the prohibition of bargaining over *all* state retirement benefits fosters predictability regarding both the contributions required of state employees and the benefits they can expect to receive, a result which inures to the benefit of all the Commonwealth employees. Similarly, creating a system whereby the Commonwealth can predict the amount it will need to contribute to keep the fund financially sound is a rational state objective.[3] Finally, the

---

[3] The second and final report of the Commonwealth Compensation Commission, dated November 20, 1972, which Commission was charged with making an exhaustive study of the retirement benefits of state employees (including state police officers, who were considered class "C" members of the Pennsylvania Retirement System) based upon a comprehensive study of retirement benefits and findings by the Pennsylvania Economy League, concluded, *inter alia,* that a) there were wide disparities in levels of benefits among different classes of members within the system, and b) the funding policies of the Commonwealth were forcing the state retirement fund increasingly into a deficit position. The Commission found further that "the December 31, 1970 evaluation of the fund

establishment of one retirement system employed state-wide simplifies the administration of benefits, and such concern is also a rational one.[4] It could be further argued that because state police officers are, of course, both police officers and state employees at one and the same time, placement in *either* classification would be constitutionally defensible. Simply because there is statutory dichotomy between the method of establishing pension benefits for state employees as a class on the one hand and municipal police officers as a different class on the other, is not sufficient reason to strike down as unconstitutional the legislative decision to choose the one classification over the other for those who could be properly classified in either.

Therefore, I would hold that Section 5955 of the Code meets the criterion enunciated in *Tosto* and is thus not an unconstitutional special law.

---

showed an unfunded employer's prior service liability of approximately $600 million over and above assets of $851 million. The actuarial soundness of the system bears a direct relationship to the benefit and contribution levels of the various classes of retirement system members." *See Commission Report of November, 1972,* which appears as an appendix in 65 P.S. following Chapter 14.

[4] One of the avowed reforms of the State Employees' Retirement Code was the elimination of class differentials and the substitution of a single retirement program for all classes of state employees, from governor to clerk, from legislators to the sergeant-at-arms. The Report of the Joint State Government Commission Task Force on the Administration and Codification of the State Employees' Retirement Code of 1972, continued the special Class C service for Pennsylvania State Police. *See* Section 206(h)(1) of the proposed Code. The continuation of this special class of service was rejected upon the enactment of the Code in 1974. After March 1, 1974, the effective date of the Code, there is but *one* class of membership, Class A, for anyone who becomes a member of the system subsequent to that date. 71 Pa. C. S. §5306(a).