546 A.2d 697

Commonwealth of Pennsylvania, Petitioner *v.* State Conference of State Police Lodges of The Fraternal Order of Police, by its Trustee Ad Litem, Paul Mc-Commons, President, Respondent.

Argued June 15, 1988, before President Judge CRUMLISH, JR., and Judges CRAIG, MACPHAIL, DOYLE, BARRY, COLINS and McGINLEY.

*Jerome J. Shestack,* with him, *James D. Crawford* and *Steve D. Shadowen, Schnader, Harrison, Segal & Lewis,* and *Frank A. Fisher, Jr.,* for petitioner.

*Gary M. Lightman,* with him, *Anthony C. Busillo, II,* for respondent.

*Gregory R. Neuhauser,* Deputy Attorney General, with him, *Susan J. Forney,* Senior Deputy Attorney General, *John G. Knorr, III,* Chief Deputy Attorney General, Chief, Litigation Section, and *LeRoy S. Zimmerman,* Attorney General, for intervenor, Attorney General.

OPINION BY JUDGE DOYLE, July 13, 1988:

Before this Court is a petition for review filed by Petitioner, the Commonwealth, which is addressed in part to our original jurisdiction and in part to our appellate jurisdiction. Count One, addressed to our original jurisdiction, alleges that the "neutral arbitrator," Arbitrator DiLauro, who was serving on an interest arbitration panel pursuant to the terms of the Act of June 24, 1968 (Act 111), P.L. 237, 43 P.S. §§217.1-217.10, was in fact not neutral and displayed "evident partiality in favor of the State Conference of State Police Lodges of the Fraternal Order of Police" (FOP), Respondent. These alleged improprieties were the basis of a dissenting opinion of the Commonwealth's arbitrator, Arbitrator Bray,

who, among his accusations, included the following in his dissenting opinion: that Arbitrator DiLauro admitted in a telephone conference with Bray that he had never reviewed transcripts or tapes for hearings at which he was not present; that Arbitrator DiLauro admitted in a telephone conference with Bray that after the hearings were closed he had read a newspaper article about the Governor's budget surplus which he thought would cover the award; that Arbitrator DiLauro admitted he depended upon "client acceptability" [presumably that of FOP] for his livelihood and had previously been "blacklisted" by FOP; that Arbitrator DiLauro had delivered the award to the FOP arbitrator before delivering it to Arbitrator Bray contrary to a previous agreement; that Arbitrator DiLauro had accepted FOP's proposals on essentially all issues.

The Commonwealth, based upon the statements in Arbitrator Bray's opinion, has requested in Count One of its Petition that we vacate the arbitration award in its entirety.

With respect to Count One only, FOP has filed a motion for judgment on the pleadings and a motion for summary judgment. Judge McGINLEY of this Court stayed depositions and all other discovery pertaining to Arbitrator DiLauro. In virtually identically worded motions FOP contends that the Commonwealth was aware of any alleged bias because of comments among or between the arbitrators *during the proceedings*. It thus reasons that because the Commonwealth made no protest then it has waived its right to do so, or that it is estopped from doing so, or that it is guilty of laches. The Commonwealth contends, however, that the comments made during the proceedings were themselves innocuous and that, in any event, their significance did not come to light until *it* had received Arbitrator Bray's dissenting opinion. It thus asserts that it should not be prevented from raising this issue.

In ruling upon a motion for judgment on the pleadings we must take as true all of the allegations in the nonmoving party's pleadings and must consider the allegations in the light most favorable to the nonmoving party. *Bata v. Central-Penn National Bank of Philadelphia,* 423 Pa. 373, 224 A.2d 174 (1966), *cert. denied,* 386 U.S. 1007 (1967). Such motion may be granted only in cases which are free from doubt and where a trial would be fruitless. *Id.* It is clear to this Court that the Commonwealth vigorously disputes, if not that certain remarks were made at the hearing, at least that the significance of those remarks was then apparent. Further, the *Commonwealth* could not have known until Arbitrator Bray's decision that Arbitrator DiLauro had relied upon an ex parte newspaper article and had not reviewed transcripts of the proceedings. The FOP argues that the Commonwealth has offered no explanation "as to why its duly, designated representative failed to raise and/or preserve any of the issues . . . by placing them on the record." This evinces a confusion between the Commonwealth as a party and the arbitrator it designated to a tripartite board of arbitration, and *City of Scranton Appeal,* 59 Pa. Commonwealth Ct. 141, 428 A.2d 1048 (1981), urged by the FOP as controlling law, is simply inapposite. While the designated employer-employee arbitrators are not expected to be neutral—indeed, they actually represent the interests of their respective parties, *Borough of New Cumberland v. Police Employees of the Borough of New Cumberland,* 503 Pa. 16, 467 A.2d 1294 (1983), the party which a particular arbitrator represents is not chargeable with its arbitrator's intimate knowledge of the tripartite board's deliberations. The third arbitrator is, of course, expected to be impartial. *Id.* at 21-22, 67 A.2d at 1297. Such being the case, and taking as true the Commonwealth's pleadings, we shall, accordingly, deny FOP's motion for judgment on the pleadings.

Summary judgment may be entered when there is no issue of material fact in dispute. Pa. R.C.P. No. 1035. The moving party must be entitled to judgment as a matter of law. *Id.* Here it is disputed that the Commonwealth understood the significance of Arbitrator DiLauro's remarks or even how they were made. That is a critical point since if the remarks were unknown or seemed innocuous there would be no reason for protest. Accordingly, we shall deny FOP's motion for summary judgment.

Although we are denying the motions of FOP we shall not, nor can we, at this juncture, vacate the entire award. This Court is aware of the enormous sums of money at issue here. The award provides State Police with a wage and benefit increase of over fifty million dollars resulting in approximately a forty percent increase in payroll costs over the next two years. We note that the expiration date of the present contract is June 30, 1988. Further, it is obvious that massive amounts of paper work will be necessary to implement the new award. Accordingly, because of the exigencies of the situation, we shall proceed to deal with the merits of the award which have been presented to us under our appellate jurisdiction. We make it clear, however, that this in no way forestalls further proceedings in this Court's original jurisdiction. We thus proceed to review those portions of the award which the Commonwealth appeals.

Our review of Act 111 interest arbitration cases is in the nature of a narrow certiorari and is limited to questions concerning the jurisdiction of the arbitrators, the regularity of the proceedings, questions involving an excess in the exercise of the arbitrator's powers, and constitutional questions. *Appeal of Upper Providence Police of Delaware County,* 514 Pa. 501, 526 A.2d 315 (1987). With this limited scope of review in mind we shall ad-

dress the challenges to the various portions of the award.

## THE PENSION PROVISION

This portion of the award provided:

Notwithstanding anything herein to the contrary, a member, regardless of age, may also retire on or after July 1, 1989 with all health benefits that are currently carried into retirement under the following conditions:

(a) At 50% of the highest year salary after 20 years of service; or

(b) At 75% of the highest year salary after 25 years of service.

The Commonwealth contends that an award of increased pension benefits is expressly prohibited by Section 5955 of the Retirement Code, 71 Pa. C. S. §5955. That section provides in pertinent part:

Pension rights of State employees shall be determined solely by this part or any amendment thereto, and no collective bargaining agreement between the Commonwealth and its employees shall be construed to change any of the provisions herein.

Further, the Commonwealth notes that upon enacting the Retirement Code the legislature simultaneously repealed Act 111 "insofar as inconsistent with the provisions of section 5955." The interplay between Section 5955 of the Retirement Code and Act 111 was previously considered by this Court in *State Conference of State Police Lodges of the Fraternal Order of Police v. Commonwealth,* 104 Pa. Commonwealth Ct. 447, 522 A.2d 136 (1987). In that case, Judge CRAIG, writing on behalf of the majority of a three judge panel, opined, *inter alia,* that Section 5955 at least does not prohibit meetings and discussions of pension matters and, thus, is not

inconsistent with the statutory authorization for collective bargaining. More precisely, the majority suggested that while pension matters may not be embodied in a collective bargaining *agreement,* they may be the subject of collective bargaining discussions and ultimately be part of an arbitrator's *award*. We have in this situation just such an award and must, therefore, determine its validity.

There is some question as to whether the *holding* in *State Conference* addressed the issue now before us. Although the matter was clearly discussed, the case came to us in the procedural posture of preliminary objections in the nature of a demurrer to a declaratory judgment action; thus no actual award was before us. We shall, therefore, consider that what we said there was dicta.

We do not take this action of disavowing the reasoning in *State Conference* lightly. But, upon reconsidering the matter, we believe that our prior reasoning, if adopted, would permit arbitrators to dictate pension awards and that this result would emasculate what we believe to be the clear legislative intent present in Section 5955 of the Retirement Code. We certainly acknowledge that Section 5955 does not *expressly* prohibit awards, as distinguished from collective bargaining agreements, involving pensions. We note, however, that any such award would *compel* legislative action, *see* Section 7 of Act 111, 43 P.S. §217.7, in the form of an "amendment" to the Retirement Code within the intendment of Section 5955. Thus, the difficulty with holding that a change in pension benefits is permitted via an award is that it allows pension benefits to be obtained by a process of compulsion but actually prohibits gaining such benefits by the process of voluntary agreements. This result, we believe, is illogical and is contrary to the statutory intent. It simply is not logical to

conclude that the legislature would prohibit voluntary action while allowing, even encouraging, the pension topic to be dealt with by compulsion only. Why would the legislature say that the parties cannot freely bargain (certainly a preferable alternative) but that an award can be compelled? Indeed, such an interpretation would be contrary to Section 2 of Act 111, 43 P.S. §217.2, which clearly indicates that the preferred method of negotiation is collective bargaining and only when that fails is arbitration to occur. *See* Section 4 of Act 111, 43 P.S. §217.4. Thus, having concluded that *State Conference* actually encourages compelled arbitration in contravention of the spirit of Act 111, we reject its reasoning.[1]

Having concluded that the arbitrators in granting the pension award acted in excess of their powers and entered an award contrary to law, we, therefore, vacate that portion of the award.

## THE UNENFORCEABILITY PROVISION

The award, perhaps recognizing the vulnerability of the pension issue, provided the following contingent benefit:

> In the event that it should be finally determined by a court of competent jurisdiction that the pension benefit increase granted by this Award is contrary to law and therefore void, the base wage of each member of the bargaining unit who

---

[1] In *State Conference* we indicated that *Grottenthaler v. Pennsylvania State Police*, 488 Pa. 19, 410 A.2d 806 (1980) and *Guthrie v. Borough of Wilkinsburg*, 508 Pa. 590, 499 A.2d 570 (1985) were not dispositive of this issue. We continue to adhere to that view, although we acknowledge that the language in *Grottenthaler* that "the purport of Section 5955 was to remove as a bargainable item under [Act 111] matters relating to pension rights of State employees" is cogent and illustrative. *Id.* at 24, 410 A.2d at 808.

is on payroll as of July 1, 1989, shall as of July 1, 1989 be increased by an additional $1,000.00 with appropriate adjustments made to all ranks pursuant to the rank differential provisions of this Agreement.

The Commonwealth maintains that this provision, if upheld, permits arbitrators to do indirectly what they cannot do directly and that it penalizes the Commonwealth for exercising its right of appeal. Further, the Commonwealth contends that the award was outside the scope of issues submitted to the panel and, hence, is invalid. FOP contends that the provision was crafted to prevent the Commonwealth from obtaining a windfall should the pension award be vacated. It further argues that the provision is in the nature of wages, and, hence, is not outside the scope of issues submitted to the arbitrators. We are again cognizant of our limited scope of review. Further, we take note of the desirability of the swift resolution of disputed labor matters, *Guthrie*, and the flexibility and deference which must be awarded to arbitrators to carry out Act 111's goal of maintaining harmony in the public employment sector. *See Township of Moon v. Police Officers of the Township of Moon*, 508 Pa. 495, 498 A.2d 1305 (1985). Keeping these principles in mind, and recognizing that the Commonwealth could have voluntarily agreed to a $1,000 wage increase and, thus, that such increase would be a proper bargaining subject, *see Township of Moon*, we conclude that the unenforceability provision is not contrary to law or in excess of the arbitrators' powers.

The Commonwealth relies upon *City of Pittsburgh v. Fraternal Order of Police, Fort Pitt Lodge # 1*, 25 Pa. Commonwealth Ct. 149, 358 A.2d 742 (1976). What we were not called upon to decide in *City of Pittsburgh, viz.*, the issue of whether such a provision is unlawful *per se*, is now squarely before us and we hold

that such a provision is not, *per se,* invalid. Moreover, there is no infirmity here because of vagueness—the Commonwealth knows exactly what the benefit will cost. In *City of Pittsburgh* the award provided that if any of its provisions were declared unlawful the value of that benefit would be computed and added to each officer's annual salary. The Court there was properly concerned over computing the dollar value of such a provision as a grievance procedure. Such is not the case here. The value of the benefit in this award is abundantly clear; accordingly, we uphold this provision.

## THE COURT MARTIAL PROVISION

The next portion of the award challenged by the Commonwealth reads as follows:

In the event that a member shall be accused of an offense that would otherwise be subject to Court Martial proceedings under Article XXVI, he shall, simultaneous with the receipt of the notice of the offense, be advised in writing that he may elect to challenge that accusation either through a court-martial proceeding or through the grievance procedure and shall be provided with a form by which to make such election within seven (7) calendar days. When made, the election shall be irrevocable. If not made in a timely manner, it shall be conclusively presumed that the member has elected the court martial procedures.

The Commonwealth contends that this award is violative of the law in that it contravenes Section 711 of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. §251. That Section pertains to the powers and duties of the Commissioner of the State Police. It provides, in certain disciplinary matters, for court martial proceedings consisting of a hearing before

a court martial board which is to determine if the charges are warranted and then recommend to the Commissioner an appropriate action, *i.e.*, demotion, discharge, or reinstatement. The Commissioner is then to review the matter and render a decision.

FOP contends that under *Board of Education of the School District of Philadelphia v. Philadelphia Federation of Teachers Local No. 3*, 464 Pa. 92, 346 A.2d 35 (1975) the award of an election of remedies is permissible. In that case the Supreme Court held, in the context of a complaint in equity filed by the school board seeking to enjoin the arbitration of the dismissal of a nontenured teacher, that the provision of the collective bargaining agreement allowing arbitration did not constitute an unlawful delegation of the school board's exclusive power. Aside from the fact that the collective bargaining there was one arising under the Public Employe Relations Act (PERA),[2] the Court noted in its opinion that had the adjudicatory power of the board under the Public School Code of 1949[3] been fundamental to the statutory scheme, its result would have been different. In our view Section 251 of the Administrative Code of 1929 contains a fundamental scheme with respect to the Commissioner's adjudicatory powers. Thus, this case is distinguishable from *Philadelphia Federation of Teachers*. Moreover, where matters of police discipline are at issue, the impact upon the public can be especially great and we believe that by repositing in the Commissioner of the State Police the sole responsibility to determine the ultimate outcome of such discipline, the legislature made the court martial proceeding an essential and integral part of a funda-

---

[2] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§1101.101-1101.2301.

[3] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§1-101 through 27-2702.

mental statutory scheme. Accordingly, we shall vacate this portion of the award.[4]

## AWARDS OF OFFICERS IN THE RANK OF SERGEANT AND ABOVE

Next, the Commonwealth maintains that the award was invalid insofar as it gave benefits to sergeants and those individuals with ranks higher than sergeant. The relevant portion of the award provides:

Effective July 1, 1988, there shall be maintained a rank differential between base rates within the ranks as follows:

(a)   The rate for the rank of Corporal shall be 8.0% above the highest base (step E) without longevity of a Trooper;

(b)   The rate for the rank of Sergeant shall be 8.5% above the rate without longevity of a Corporal;

(c)   The rate for the rank of Lieutenant shall be 9.0% above the rate without longevity of a Sergeant;

(d)   The rate for the rank of Captain shall be 9.0% above the highest rate without longevity of a Lieutenant;

(e)   The rate for the rank of Major shall be 9.5% above the highest rate without longevity of a Captain;

(f)   The rate for the rank of Lt. Col. shall be 10.0% above the highest rate without longevity of a Major.

---

[4] We reject FOP's assertion that this issue was not properly preserved and that the Commonwealth has no standing to assert the illegality of the award. As an employer the Commonwealth has a direct interest in who will be adjudicating disciplinary actions of its employees.

> The existing steps 'A' through 'D' in the rank
> of Corporal and above shall be eliminated. The
> existing step 'E' for the rank of Corporal and
> above shall be the rate upon which the base dif-
> ferential shall be calculated.

The Commonwealth concedes that in the past it permitted the inclusion of the officers in these positions in the bargaining unit. It maintains, however, that it is not estopped from now refusing to include them because (1) the contract under which they were included is about to expire and it cannot give life to any statutory rights and (2) there has never been a determination by the Pennsylvania Labor Relations Board that these individuals are within the bargaining unit.[5] While we are not enamored of the Commonwealth's sudden change in position, we certainly agree that the expiring contract can create no rights in the employees. We hastily add, however, that our holding would be different if at some previous time the individual ranks in question had been certified as within the bargaining unit and the Commonwealth were now, concomitantly with new contract negotiations, seeking to have that unit determination altered. *Cf. Wayne Highlands Education Association v. Wayne Highlands School District,* 92 Pa. Commonwealth Ct. 114, 117 n.1, 498 A.2d 1375, 1377 n.1 (1985); *Northwest Tri-County Intermediate Unit No. 5 Education Association v. Northwest Tri-County Intermediate Unit No. 5,* 77 Pa. Commonwealth Ct. 92, 465 A.2d 89 (1983); *Richland Education Association v. Richland School District,* 53 Pa. Commonwealth Ct. 367, 418 A.2d 787 (1980).

Accordingly, we vacate this portion of the award.[6]

---

[5] A petition for unit clarification was filed with the Pennsylvania Labor Relations Board at case No. PF-U-87-88-E, and apparently is still pending. *See generally* Section 604 of PERA, 43 P.S. §1101.604.

[6] We again are faced with FOP's contention that this issue was not preserved. We find this contention to be meritless. Further, we

## CONSTITUTIONALITY OF ACT 111

Finally, the Commonwealth challenges Act 111 on its face insofar as the Act permits the compulsion of legislation. The Commonwealth concedes, as it must, that this issue was addressed in *Harney v. Russo*, 435 Pa. 183, 255 A.2d 560 (1969), where the Supreme Court upheld the constitutionality of Act 111. We are, of course, bound by that determination; even if we were not, however, we would find that Act 111 is constitutionally sound in this regard.

Based upon the foregoing opinion, the motions for summary judgment and judgment on the pleadings are denied and the award is vacated in part and affirmed in part.

## ORDER

Now, July 13, 1988, the motions of the Fraternal Order of Police for judgment on the pleadings and alternatively summary judgment are denied. Part Four of the award as it pertains to pension benefits is vacated, but the unenforceability provision appearing in Part Four of the award is upheld. Further, it is ordered that Part Nine of the award pertaining to the election of remedies in court martial procedures is vacated and Part Three relating to rank differential and all parts of the award relating to members in ranks of sergeant and above are vacated. The remainder of the award is upheld, but without prejudice to the Commonwealth to continue further proceedings with respect to Count One in its Petition for Review.

---

do not view the Commonwealth's failure to seek a supersedeas until the Pennsylvania Labor Relations Board resolves the bargaining unit question to be a failure to exhaust administrative remedies.

DISSENTING AND CONCURRING OPINION BY JUDGE CRAIG:

As due recompense for taking the right to strike away from our state and local police, the Pennsylvania Constitution and laws have provided for binding arbitration which

> shall constitute a mandate . . . to the lawmaking body of such political subdivision or of the Commonwealth, with respect to matters which require legislative action, to take the action necessary. . . .

Pa. Const. art. III, §31; same words adopted in Act of June 24, 1968, P.L. 237 (Act 111), §4, 43 P.S. §217.4.

Has the legislature discriminated against the state police by depriving them, as a class set apart, from the quid pro quo of binding pension-benefit arbitration which remains available to the local police of every city, borough and township?

Certainly there is not a word in 71 Pa. C. S. §5955 which effects any such violation of equal protection of laws. In pertinent part, it reads:

> Pension rights of State employees shall be determined solely by this part or any amendment thereto, and no collective bargaining agreement between the Commonwealth and its employees shall be construed to change any of the provisions herein.

That law does not mention anything about binding arbitration or arbitration awards. The legislators have told us, in 1 Pa. C. S. §1921(b), to give their words, when expressed in such unambiguous language, the plain meaning; judges are not to overlook the letter of the law in order to invoke their own view of its spirit.

And a straightforward literal reading of the passage is consistent with the principle of preferring an interpretation which has a constitutionally valid non-discriminatory effect, in view of the fact that there is no law

which, by any reading, eliminates binding arbitration as to local police pensions.

Because the constitution, as the highest law of the state, has unequivocally empowered arbitrators to issue a "mandate . . . to the lawmaking body . . . of the Commonwealth, with respect to matters which require legislative action," there is nothing unthinkable in leaving that power alone while raising up a statutory barrier against effecting a "change" in the Retirement Code by agreement alone.

Moreover, there is nothing which empowers this court to amend 71 Pa. C. S. §5955 by inserting "nor any arbitration award" into its prohibitory phrase, regardless of the undoubted sincerity of the concern which prompts such a judicial reading.

To contend, as the Commonwealth does, that pension arbitration for the state police was eliminated from Act 111 by the Retirement Code's repealer of Act 111 "insofar as inconsistent with the provisions of section 5955," is to beg the question. Section 5955 presents no inconsistency with the binding arbitration provisions of Act 111, unless words about arbitration are injected into section 5955, where they cannot now be found.

As the Pennsylvania Supreme Court said in *Harney v. Russo*, 435 Pa. 183, 255 A.2d 560 (1969), Act 111 was intended to prevent strikes by police, as public guardians in critical safety positions. Just as clearly, Pa. Const. art. III, §31 authorized, and Act 111 implemented, the arbitration power to carry forward that same purpose, by supplying a deserved alternative.

The pension award can stand, upon a solid constitutional and statutory foundation, subject only to the unresolved original jurisdiction proceedings.

The remaining holdings—sustaining the constitutionality of Act 111 and the effectiveness of the unenforceability provision, denying judgment on the

pleadings and summary judgment, and dealing with court. martials and the unit certification of supervisors—are soundly based as well stated in Judge DOYLE's majority opinion.

However, rejection of our reasoning in *State Conference of State Police Lodges of Fraternal Order of Police v. Commonwealth,* 104 Pa. Commonwealth Ct. 447, 522 A.2d 136 (1987), leaves the constitutionality of section 5955 without an explicit resolution because the majority holding in *State Conference* was based upon an interpretation of that section which obviated the constitutional problem. Because the state police (FOP) have been entitled to rely upon that *State Conference* holding, the FOP understandably has not pursued the constitutional question in this case. Hence, it appears that the FOP will have the right now to be heard on the constitutional issues resurrected by this court's changed position.

Judge COLINS and Judge MCGINLEY join in this dissenting and concurring opinion.