530 A.2d 962

Joint Bargaining Committee of the Pennsylvania Social Services Union, Local # 668, SEIU and The Pennsylvania Employment Security Employees Association, Local # 675, SEIU, By Its Trustee Ad Litem, Anna Burger Price and The Pennsylvania Social Services Union, Local # 668, SEIU, By Its Trustee Ad Litem, Anna Burger Price, Petitioners *v.* Commonwealth of Pennsylvania, The Honorable Richard Thornburgh, Governor of the Commonwealth of Pennsylvania et al., Respondents.

Argued June 10, 1987, before President Judge CRUMLISH, JR., Judges CRAIG, MACPHAIL, DOYLE and COLINS.

*Wesley H. Johnson, Jr.,* General Counsel, for petitioners.

*Frank A. Fisher, Jr.,* Deputy Chief Counsel, with him, *Steven O. Newhouse,* Assistant Counsel, and *John D. Raup,* Chief Counsel, for respondents.

OPINION BY JUDGE DOYLE, August 27, 1987:

The instant case arises under our original jurisdiction and has its genesis in a Petition for Review filed by Petitioners[1] seeking declaratory and injunctive relief. Petitioners allege that Respondent Thornburgh has violated Article VIII, Section 12 of the Pennsylvania Constitution[2] and Section 613 of The Administrative Code

---

[1] Petitioner here is the Joint Bargaining Committee, which is an unincorporated employee association. Its trustee ad litem, Anna Burger Price, is the President of Local No. 668. The Pennsylvania Social Services Union, the other Petitioner, is an unincorporated employee association and its trustee ad litem is also Anna Burger Price.

[2] Article VIII, Section 12 reads as follows:

**Governor's budgets and financial plan**

Annually, at the times set by law, the Governor shall submit to the General Assembly:

(a) A balanced operating budget for the ensuing fiscal year setting forth in detail (i) proposed expenditures classified by department or agency and by program and (ii) esti-

of 1929, 71 P.S. §233[3] (requiring submission of a balanced operating budget). They further allege that Respondents[4] have violated Article VIII, Section 14 of

mated revenues from all sources. If estimated revenues and available surplus are less than proposed expenditures, the Governor shall recommend specific additional sources of revenue sufficient to pay the deficiency and the estimated revenue to be derived from each source;

(b) A capital budget for the ensuing fiscal year setting forth in detail proposed expenditures to be financed from the proceeds of obligations of the Commonwealth or of its agencies or authorities or from operating funds; and

(c) A financial plan not less than the next succeeding five fiscal years, which plan shall include for each such fiscal year:

(i) Projected operating expenditures classified by department or agency and by program, in reasonable detail, and estimated revenues, by major categories, from existing and additional sources, and

(ii) Projected expenditures for capital projects specifically itemized by purpose, and the proposed sources of financing each.

[3] Act of April 9, 1929, P.L. 177. Section 613 was added by Section 3 of the Act of September 27, 1978, P.L. 775. Section 613 of The Administrative Code provides in pertinent part:

**Submission of budget to General Assembly**

As soon as possible after the organization of the General Assembly, but not later than the first full week in February of each year, except in the case where a Governor has been elected for his first term of office and then no later than the first full week in March, the Governor shall submit to the General Assembly copies of agency budget requests and a State budget and program and financial plan embracing:

(1) A balanced operating budget for the ensuing fiscal year setting forth in detail:

(i) The amounts recommended by him to be appropriated to the General Assembly, the Judicial Department, the Governor, and the several administrative departments, boards, and commissions of the State government, and to institutions within the State, and for all public purposes, classified by department or agency and by program.

the Pennsylvania Constitution[5] (requiring appropriation of any surplus funds) and Article VIII, Section 10 of the Pennsylvania Constitution[6] (mandating that audits of

---

(ii)  The estimated revenues or receipts from any and all sources, and an estimated amount to be raised by taxation or otherwise, including proposals for new revenues and receipts.

(2)  A capital budget for the ensuing fiscal year setting forth capital projects to be financed from the proceeds of obligations of the Commonwealth or of its agencies or authorities or from operating funds.

(3)  A program and financial plan for not less than the prior fiscal year, the current fiscal year, this budget year and the four succeeding fiscal years, which plan shall include for each such fiscal year:

(i)  Actual or estimated operating expenditures classified by department or agency and by program, in reasonable detail, and actual or estimated revenue by major categories from existing and additional sources.

. . . .

(4)  The budget shall list as a single, separate line item for each administrative department, board, and commission the amount which the Governor recommends to be appropriated for the ensuing fiscal year for public relations. For the purposes of this clause, 'public relations' shall include the preparation, presentation and distribution of advertising, publications, radio tapes, television films and tapes, and media releases. The separate line item shall include all compensation, including fringe benefits; all travel, meal, lodging, and similar expenses; the cost of purchasing new equipment and supplies; the cost of leasing offices and equipment; the cost of purchasing material, including newspapers, magazines, movies, films and tapes; the cost of using wire service equipment; and all other similar public relations expenditures.

[4] Respondent Thornburgh is Governor of the Commonwealth of Pennsylvania. Respondent Barry Stern is Secretary of Administration. Respondent Robert A. Bittenberger is Secretary of the Budget. Respondent Christ Zervonis is Director of the Bureau of Labor Relations. Respondent Pamela Brand is an employee benefits specialist in the Bureau of Personnel, Office of Administration and

Commonwealth financial affairs be made in accordance with generally accepted auditing standards). All of these allegations are rooted in a contract entered into by Petitioners and Respondents on or about July 1, 1983. The pertinent provision of this agreement reads as follows:

> It is the intent of the parties that an unfunded reserve account shall be established by the Employer. The actual incurred costs to the Employer for the hospital and medical insurance program for each fiscal year beginning with the fiscal year 1984-85 for all employees under the program, including employees represented by other unions and non-union employees shall be determined. If the incurred costs for a fiscal year were less than $1,650.00 per employee, the difference for all employees will be credited to the reserve account. The difference credited to the reserve account will be accumulated from year

---

is alleged to be knowledgeable about the budgeted and actual costs of the health and hospitalization insurance coverage for Commonwealth employees.

[5] Article .VIII, Section 14 reads as follows:

**Surplus**

All surplus of operating funds at the end of the fiscal year shall be appropriated during the ensuing fiscal year by the General Assembly.

[6] Article VIII, Section 10 reads as follows:

**Audit**

The financial affairs of any entity funded or financially aided by the Commonwealth, and all departments, boards, commissions, agencies, instrumentalities, authorities and institutions of the Commonwealth, shall be subject to audits made in accordance with generally accepted auditing standards.

Any Commonwealth officer whose approval is necessary for any transaction relative to the financial affairs of the Commonwealth shall not be charged with the function of auditing that transaction after its occurrence.

to year and used to offset health care costs which exceed the negotiated Employer contribution limit in future years. If the actual incurred costs to the Employer for the hospital and medical insurance program for fiscal year exceed the negotiated Employer contribution limit of $1,650.00 per employee, a plan will be established by the Joint Health Care Committee under which the Employer will recover the excess expenditure. In the event the Committee is unable to agree on a plan under which the Employer will recover the excess expenditure, the parties shall submit the matter to arbitration in accordance with Subsection b above.

Petitioners further allege that, pursuant to the collective bargaining agreements, the parties collectively agreed that all unions representing Commonwealth employees would have one vote each on the Joint Health Committee, and that the purpose of the Committee is to design a hospital and medical insurance program that is estimated to cost the Commonwealth no more than $1,650.00 per employee for each fiscal year beginning in 1984-85. As the Petitioners explain it, the purpose of this provision is to put a cap on the Commonwealth's liability for hospital and medical insurance. In addition, the collective bargaining agreement provides for an unfunded reserve account, and if costs per employee do not exceed $1,650.00, the difference is to be credited toward this reserve account. Petitioners assert that the above provisions have been carried forward into the current collective bargaining agreement, which is effective July 1, 1985 through June 30, 1988.

The theory under which Petitioners bring their case is as follows: in the years 1984, 1985 and 1986, Respondent Thornburgh submitted a proposed operating budget to the General Assembly, which for each of

these three years requested a sum of less than $1,650.00 per employee per year to fund the health and hospitalization insurance coverage for Commonwealth employees. For each of these three years, Petitioners allege that the actual cost per employee was less than the $1,650.00 cap. Petitioners thus seek to have the difference between the actual cost and the cap, which they allege is a minimum of $4,320,000, allocated to the unfunded reserve account. To this end they allege that Respondent Thornburgh, by not requesting the $1,650.00 per employee in his proposed budget for the years in question, has violated both the constitutional requirement mandating submission of a balanced budget and Section 613 of the Administrative Code of 1929, requiring the same balanced budget. They further assert that by failing to credit the account with the difference between the negotiated cap and the actual incurred cost, Respondents have created a surplus within the meaning of Article VIII, Section 14 of the Pennsylvania Constitution, and that by failing to request an appropriation to allocate this surplus, they have violated Article VIII, Section 14. Finally, Petitioners allege that to the best of their belief Respondent Bittenberger, Secretary of the Budget, failed to disclose the existence of the reserve account in the general purpose financial statement prepared by him and that such failure was contrary to generally accepted accounting procedures—therefore, it was violative of the auditing provision in Article VIII, Section 10 of the Pennsylvania Constitution.

Petitioners request as their relief that this Court enter a declaratory judgment as to the existence and amount of the reserve account; require Respondents to allocate to the account "an amount consisting of the difference between the negotiated cap and the actual costs for the fiscal years 1984-1985 and 1985-1986 [;and]

[i]ssue a mandatory injunction requiring Respondents to present legislation to the General Assembly requesting appropriation of surplus funds to fund the debt of the reserve account."

Subsequent to the filing of this petition, there followed a flurry of preliminary objections by Respondents. It is those preliminary objections that are presently before us and upon which we shall now proceed to rule.

First, Respondents maintain that because the contract language in question was first negotiated and made a part of the contract in 1983, and because Petitioners have failed to allege that it took any action prior to filing the present petition, the case should be dismissed on grounds of timeliness. Respondents, however, have not included this point in the statement of questions in their brief and have not briefed the issue; therefore, they have waived it. *See* Pa. R.A.P. 2116(a); Pa. R.A.P. 106.

Respondents next object on the basis that, to the extent Petitioners allege that Respondents did not bargain in good faith, jurisdiction of this matter is with the Pennsylvania Labor Relations Board. *See* Section 1301 of the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §1101.1301. Our review of the petition fails to disclose any allegation that Respondents have failed to bargain in good faith. What Petitioners allege is the refusal to *implement,* not *bargain,* contract provisions, which refusal allegedly constitutes unconstitutional conduct. Therefore, we overrule this preliminary objection.

In a related objection, Respondents maintain that jurisdiction rests with an arbitrator pursuant to Section 903 of the Public Employe Relations Act, 43 P.S. §1101.903, and that by not employing this method of redress, Petitioners have failed to exhaust administrative

remedies. Central to this preliminary objection is the notion that whether Respondents are required to fund the unfunded account is a question of contract interpretation. Respondents seem to suggest that the crediting requirement in the disputed provision does not require an on-going allocation of monies representing the difference between actual costs and the cap. Petitioners, in essence, assert that it does. We agree that the question of what was meant by this provision is one solely within the province of an arbitrator. But, we recognize that what Petitioners seek here is a declaration of the constitutionality of having an unfunded account, and this question is one that is outside the jurisdiction of an arbitrator. One is not required to exhaust administrative avenues if such avenues will not provide the relief requested. *Feingold v. Bell of Pennsylvania,* 477 Pa. 1, 383 A.2d 791 (1977). Therefore, we will overrule Respondents' preliminary objection, but in doing so we do not suggest that the question of what the parties intended to be done with the unfunded account, or when it must be funded, can be decided by this Court.

Next, Respondents assert that *Petitioners* lack standing to challenge the legality of the terms of the contract that they entered into with Respondents. Respondents cite *Grottenthaler v. Pennsylvania State Police,* 488 Pa. 19, 410 A.2d 806 (1980) and *Pittsburgh Joint Collective Bargaining Committee v. City of Pittsburgh,* 481 Pa. 66, 391 A.2d 1318 (1978) both of which held that an *employer* could not refuse to perform its contract obligations by asserting that a part of the contract it had freely negotiated was illegal. In essence, this is an estoppel argument directed to an *employer.* Were the situation as Respondents posit it, we would agree that *Grottenthaler* and *Pittsburgh Joint Collective Bargaining Committee* would control. Such is not the case, however. Petitioners did not allege that *they* are unable to fulfill a

contract obligation because the obligation is illegal; rather, they allege that it is Respondents' *failure* to honor an alleged contract provision—not Respondents' performance of it—that results in unconstitutional acts and statutory violations against the Petitioners. Thus, *Grottenthaler* and *Pittsburgh Joint Collective Bargaining Committee* are inapposite, and we shall overrule Respondents' preliminary objection.

Respondents next assert that because Petitioners have not alleged any direct, substantive or present interest in the money they seek to have credited to the unfunded account, they have failed to state a cause of action. This preliminary objection, while expressed in language normally associated with standing, appears to be a challenge, in reality, to the ripeness of the present action. We shall, however, consider it as raising both arguments.

As to standing, the applicable law is expressed in the seminal case of *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975) wherein the Pennsylvania Supreme Court stated:

> [O]ne who seeks to challenge governmental action must show a direct[7] and substantial[8] interest. . . . In addition, he must show a sufficiently close causal connection between the challenged action and the asserted injury to qualify the interest as 'immediate' rather than 'remote.'

---

[7] In *William Penn Parking Garage*, the Supreme Court discussed the requirement that one's interest in a matter be direct when it stated: "The requirement that an interest be 'direct' simply means that the person claiming to be aggrieved must show causation of the harm to his interest by the matter of which he complains." *Id*. at 195, 346 A.2d at 282 (footnote omitted).

[8] In *William Penn Parking Garage*, the Supreme Court stated: "[T]he requirement of a 'substantial' interest simply means that the individual's interest must have substance—there must be some dis-

*Id*. at 202, 346 A.2d at 286 (footnotes added). It is well-settled that associations such as Petitioners herein have standing to bring an action on behalf of their members. Inasmuch as the failure to fund could result in a deficit that would harm Petitioners' members, we believe that Petitioners have exhibited sufficient interest under *William Penn Parking Garage* so as to entitle them to standing. Accordingly, we reject the idea that Petitioners lack standing and overrule the preliminary objection.

To the extent that Respondents' preliminary objection asserts that the case is not ripe, we note that the action is one for a declaratory judgment. Thus, the fact that no member of Petitioners' association has yet suffered harm is of no moment. Section 7532 of the Declaratory Judgments Act, 42 Pa. C. S. §7532, provides that a court may declare rights "whether or not further relief is or could be obtained." Additionally, Section 7541(a) of the Declaratory Judgments Act, 42 Pa. C. S. §7541(a) pertinently provides: "This subchapter is declared to be remedial. Its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations, and is to be liberally construed and administered." Accordingly, we do not believe that the fact that Petitioners have suffered no injury as yet precludes them from obtaining relief and, therefore, we will overrule Respondents' preliminary objection.

Next, Respondents preliminarily object on the basis that the relief sought by Petitioners is a contract reformation, in that what Petitioners seek is to compel the Commonwealth to fund an unfunded account. We have

---

cernible adverse effect to some interest other than the abstract interest of all citizens in having others comply with the law." *Id*. at 195, 346 A.2d at 282.

already determined that this Court lacks jurisdiction to interpret the contract and to decide when the contract itself requires the account to be funded. On that basis, and to this extent only, we shall sustain this preliminary objection.

Respondents' next preliminary objection pertains to sovereign immunity. They postulate that that doctrine bars suits that seek to compel affirmative action on the part of state officials. Specifically, the actions here sought are to mandate Respondents to allocate funds to the account and to compel them to present legislation to the General Assembly requesting appropriation of surplus funds to fund the debt of the reserve account. It is well-settled that:

> [s]uits which seek to compel *affirmative action on the part of state officials or to obtain money damages* or *to recover property from the Commonwealth* are within the rule of immunity; suits which simply seek *to restrain state officials* from performing affirmative acts are not within the rule of immunity.

*Philadelphia Life Insurance Co. v. Commonwealth,* 410 Pa. 571, 576, 190 A.2d 111, 114 (1963) (emphasis in original). Thus, to the extent that allocation of funds or presentation of legislation is sought, such relief is beyond the scope of this action and the preliminary objection filed on this basis is sustained.

Respondents' final preliminary objections are in the nature of demurrers, and essentially assert that Petitioners have not stated a cause of action because they have not alleged facts to show (1) that Respondent Thornburgh's requested appropriation was not in fact the proposed expenditure; (2) that Respondent Thornburgh failed to submit a balanced operating budget; (3) that Respondents have any duty to allocate surplus funds; and (4) that generally accepted accounting

standards require that an unfunded reserve account be included as a financial liability in a general purpose financial statement.

The first two demurrers in particular can be overruled only if we assume that the unfunded account was contractually required to be funded. As previously noted, we lack jurisdiction to decide such a question and, therefore, we sustain the demurrers. What we can do and shall do, however, in response to Petitioners' request for any relief we deem appropriate, is to determine that *the existence of a non-funded account is not a constitutional violation per se and that by not funding the account now the Commonwealth violates no constitutional provision*. We leave it to an arbitrator to decide, if necessary, whether the failure to fund the account at the present time is a contractual violation.

As to the question of whether Respondents have violated the surplus provision of the Pennsylvania Constitution, we hold that none of the named Respondents are charged with the duty to allocate surplus funds; that is the province of the General Assembly. Therefore, the demurrer on this basis is sustained. Finally, as to the auditing provision, we believe that resolution of this issue requires a factual record, and hold that the Petition for Review as presently worded does not allege a constitutional violation of Article VIII, Section 10. Therefore, the demurrer on this basis is sustained and leave is granted to Petitioners to amend their petition in this respect.

Based upon the foregoing discussion, the preliminary objections of the Commonwealth are sustained in part and overruled in part. Therefore, other than the allowance to amend on the issue of acceptable accounting standards, only that part of the Petitioners' suit which seeks declaratory judgment on the constitutionality of the contract provision remains and will proceed to trial.

ORDER

Now, August 27, 1987, we hereby enter the following order:

1. Respondents' preliminary objection as to timeliness is waived.

2. Respondents' preliminary objections relating to subject-matter jurisdiction being with the Pennsylvania Labor Relations Board are overruled.

3. Respondents' preliminary objections relating to standing and mootness are overruled.

4. Respondents' preliminary objection relating to contract reformation is sustained.

5. Respondents' preliminary objection relating to sovereign immunity is sustained.

6. Respondents' preliminary objections in the nature of demurrers are sustained.

Leave is granted to Petitioners to amend the petition with respect to the allegation that the auditing provision appearing in Article VIII, Section 10 of the Pennsylvania Constitution has been violated. The Petitioners' cause of action requesting a declaratory judgment on the constitutionality of the contract provisions will proceed to trial upon praecipe of either party.

Petitioners' request for costs and attorney's fees is denied.