585 A.2d 595

**PENNSYLVANIA MEDICAL SOCIETY, Petitioner,**

v.

**Constance B. FOSTER, Insurance Commissioner of the Commonwealth of Pennsylvania, and Ernest D. Preate, Jr., Attorney General of the Commonwealth of Pennsylvania, Respondents.**

Commonwealth Court of Pennsylvania.

Argued June 13, 1990.

Decided Jan. 11, 1991.

194

Robert B. Hoffman, Reed, Smith, Shaw & McClay, with him, Elizabeth Metz, Pennsylvania Medical Society, Harrisburg, for petitioner.

Gregory P. Miller, Philadelphia, with him, Janice L. Anderson, Deputy Atty. Gen., John G. Knorr, III, Chief Deputy Atty. Gen., Chief of Litigation Section, and Ernest D. Preate, Jr., Atty. Gen., Harrisburg, for respondents.

Gregory R. Neuhauser, with him, Kevin J. McKeon, Malatesta, Hawke & McKeon, Harrisburg, for amicus curiae, Pa. Chiropractic Federation.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, McGINLEY, SMITH and PELLEGRINI, JJ.

COLINS, Judge.

This action was filed on March 27, 1990 by Pennsylvania Medical Society (PMS) on behalf of its physician members against the Insurance Commissioner, Constance B. Foster, and the Attorney General, Ernest D. Preate, Jr. The Petition for Review filed by PMS concerns implementation of Section 18 of the Act of February 7, 1990, P.L. 8, 1990–6 (Act 6), which amended Section 1797 of the Pennsylvania Motor Vehicle Financial Responsibility Law (Law), 75 Pa. C.S. § 1797. PMS's Petition was amended on March 30,

1990, requesting declaratory and injunctive relief. The five counts, as summarized in PMS's brief, are as follows:

*Count I* presents a due process claim premised on the Act's and the Commissioner's failure to address a series of basic billing questions necessary for physicians to implement the Act. The Petition, at Para. 21(A–E) lists five such questions. Count I contends that because of these failures, the Act violates their due process rights both because it is both [sic] unconstitutionally vague and unconstitutionally oppressive.

*Count II* seeks the proper construction of Section 1797(a) as to the billing questions raised in Count I.

*Count III* contends that the charge limitations imposed by Section 1797(a) violate the due process clause in the absence of legislative findings, fairly made, that physician charges to motor vehicle accident victims are excessive and/or unnecessarily high or that they have contributed in a meaningful way to increases in the costs of motor vehicle insurance.

*Count IV* contends that Section 1797(a) constitutes an impermissible delegation of legislative authority in two distinct respects—first to the federal government and separately to a private party, Pennsylvania Blue Shield.

*Count V* contends that the Commissioner has misinterpreted and misapplied a central provision of Section 1797(a) providing that physicians be compensated at '110% of the [Medicare] prevailing charge at the 75th percentile'. At the direction of the Commissioner, insurance companies are compensating physicians at a rate which differs substantially from the legislative command.

PMS's brief at p. 1–2.

Act 6, which became effective July 1, 1990, mandates that insurers reduce premiums by a minimum of 10% to 22%, depending on choices made by the insured, and fees a medical provider can charge for treating automobile accident victims at the lower of 110% of the prevailing Medicare rate calculated at 75% of its customary charge in a particular locality for a particular service, or the provider's usual

and customary charge.[1] Act 6 also amended the Crimes Code[2] by providing anti-fraud provisions with criminal penalties.

The preliminary injunction sought by PMS was granted by this Court on April 11, 1990 after hearing.[3] The Insurance Commissioner was directed to ensure that Section 1797(a) was not implemented. This ruling was promptly appealed, resulting in an automatic supersedeas. On April 19, 1990 the Supreme Court temporarily stayed the automatic supersedeas until further order of Court, which in essence allowed Act 6 provisions to take effect.

On April 19, 1990, the Attorney General filed preliminary objections. In his brief in support of his preliminary objections, he states as follows:

The Attorney General is an unnecessary party in light of the Commissioner's participation in this suit as a respondent. Should the court ever declare Section 1797 unconstitutional, the Attorney General would be bound by that decision.

Attorney General's brief at p. 10. PMS indicates that it will not oppose the granting of the preliminary objections in light of the Attorney General's above-quoted statement. Therefore, we sustain the Attorney General's preliminary objections and the Petition for Review is dismissed against him.

On April 30, 1990, the Insurance Commissioner also filed preliminary objections to PMS's amended petition for review. These objections are in essence as follows: (1) that PMS has failed to state a claim because it has not demonstrated that Act 6 is vague and ambiguous on its face so as to violate due process of law; (2) that PMS has failed to

1. 75 Pa.C.S. § 1797(a). *See also* § 1799.7(b).

2. 18 Pa.C.S. §§ 101–9183.

3. The Pennsylvania Medical Providers Association (PMPA) also filed a petition for review at 66 Misc. Docket 1990, which was heard by this Court in conjunction with PMS's petition. The hearings with regard to both parties were held jointly and identical orders granting a preliminary injunction were applicable to both PMS's and PMPA's claims.

state a claim for violation of the Fourteenth Amendment of the United States Constitution or Article I, Section 1 of the Pennsylvania Constitution because it has not demonstrated that its members have a protected interest in reimbursement amounts that they would receive from insurers for services rendered to automobile accident victims and PMS has not shown that Act 6 is not rationally related to a legitimate state interest; (3) that PMS has failed to state a claim because it has not demonstrated that the General Assembly has delegated legislative power in violation of Article II, Section 1 of the Pennsylvania Constitution; (4) that this Court lacks jurisdiction under the Declaratory Judgments Act because PMS failed to join all necessary parties; (5) that this Court lacks jurisdiction under the Declaratory Judgments Act because PMS failed to allege any actual justiciable controversy; and (6) that PMS's request for declaratory and injunctive relief is barred by the doctrine of sovereign immunity.

When determining whether to dismiss or sustain preliminary objections, we are guided by the following principles as stated in *Gekas v. Shapp*, 469 Pa. 1, 364 A.2d 691 (1976):

> The standards for sustaining preliminary objections in the nature of a demurrer are quite strict. A demurrer admits every well-pleaded material fact set forth in the pleadings to which it is addressed as well as all inferences reasonably deducible therefrom, but not conclusions of law.... In order to sustain the demurrer, it is essential that the plaintiff's complaint indicate on its face that his claim cannot be sustained, and the law will not permit recovery.... If there is any doubt, this should be resolved in favor of overruling the demurrer.

*Id.*, 469 Pa. at 5–6, 364 A.2d at 693 (citations omitted).

We will now address the Insurance Commissioner's preliminary objections to PMS's challenges regarding the provisions of Act 6.

PMS in its amended petition alleges that Section 1797(a) of the Law is unconstitutionally vague in that it lacks clarity so that physicians will not know who is to compen-

sate them, at what rate, and when, therefore violating due process.

It is fundamental to our jurisprudence that enactments of the Legislature are clothed with a presumption of constitutional validity, and that appellants, by claiming that an act is unconstitutional, carry a heavy burden of proof. See, e.g., *United States v. Vuitch*, 402 U.S. 62, 70, 91 S.Ct. 1294, 1298, 28 L.Ed.2d 601 (1971); *In re William L.*, 477 Pa. 322, 329, 383 A.2d 1228, 1231 (1978); *Tosto v. Pennsylvania Nursing Home Loan Agency*, supra, 460 Pa. [1] at 16, 331 A.2d [198] at 205 [ (1975) ], quoting *Daly v. Hemphill*, 411 Pa. 263, 271, 191 A.2d 835, 840 (1963) ('Courts may not declare a statute unconstitutional "unless it clearly, palpably and plainly violates the Constitution." ').

*National Wood Preservers, Inc. v. Department of Environmental Resources*, 489 Pa. 221, 234, 414 A.2d 37, 44 (1980).

The Insurance Commissioner asserts that PMS's allegations concerning the facial validity of the Act contain no facts concerning the enforcement of the questioned provisions and that her statement of policy addresses and clarifies the manner in which PMS's members will be reimbursed. Although the statement expressly indicates that it is "not ... entitled to the force and effect of law," policy statements do provide information as to an agency's tentative intentions for the future. *Hillcrest Home, Inc. v. Department of Public Welfare*, 123 Pa.Commonwealth Ct. 289, 553 A.2d 1037, *petition for allowance of appeal denied*, 522 Pa. 614, 563 A.2d 500 (1989).

 PMS complains that as of the date of argument regulations had not been promulgated by the Insurance Department that could clarify its intentions. This Court believes that properly promulgated regulations can cure vagueness problems, but without a proper record we cannot at this juncture determine whether portions of Section 1797(a) are unconstitutionally vague.

It is well-settled that:

Vague statutes offend the constitution because they may (1) trap the innocent by failing to give a person of ordinary intelligence reasonable opportunity to know what is prohibited so that he may act accordingly; or (2) result in arbitrary and discriminatory enforcement in the absence of explicit guidelines for their application.... [A] legislative enactment will be deemed invalid 'only if it is so vague and indefinite that courts are unable to determine with any reasonable degree of certainty the intent of the legislative body or so incomplete, conflicting and inconsistent in its provisions that it cannot be executed.'

*Pennsylvania Builders Association v. Department of Revenue*, 122 Pa.Commonwealth Ct. 493, 506, 552 A.2d 730, 737 (1989), *aff'd per curiam*, 524 Pa. 134, 569 A.2d 928 (1990) (citations omitted).

In light of the above, we cannot state with certainty that PMS's petition cannot be sustained as a matter of law. This doubt must be resolved by overruling the preliminary objection concerning vagueness. We note that similar preliminary objections have been overruled by this Court in *Pennsylvania Chiropractic Federation v. Foster*, 136 Pa. Commonwealth Ct. 465, 583 A.2d 844 (1990) and *Pennsylvania Medical Providers Association v. Foster*, 136 Pa.Commonwealth Ct. 232, 582 A.2d 888 (1990).

The Commissioner's second preliminary objection actually raises two interrelated issues. The first part claims that there is neither a violation of the Fourteenth Amendment of the United States Constitution nor of Article I, Section 1 of the Pennsylvania Constitution because PMS's members have no protected interest in reimbursement amounts from insurers. The second part concerns whether there is a rational relationship between Act 6 and a legitimate state interest.

The Commissioner argues that PMS's members lack a protected interest sufficient to invoke constitutional protec-

tions. PMS argues that the Act lacks findings that charges by physicians contributed to increases in the insurance rates and that the limitations on fees are arbitrary, oppressive and impact on the doctor/patient relationship. PMS cites *Gambone v. Commonwealth*, 375 Pa. 547, 101 A.2d 634 (1954) in support of its assertion that a more stringent balancing test should be applied to Act 6 by the court to determine constitutionality. It argues that the legislation must have a "real and substantial relation to the objects sought to be attained." *Id.*, 375 Pa. at 551, 101 A.2d at 637.

We believe that Act 6 goes beyond the regulation of insurance companies and enters into the regulation of the doctor/patient relationship. There is no existing Pennsylvania law mandating that doctors consent to have their maximum fee schedule set by the legislature when such fee schedule is fully disclosed and agreed to by the patient. Furthermore, a doctor puts himself or herself at risk for criminal prosecution if the bill is in excess of the cap provided for under the Act.

In *Adler v. Montefiore Hospital Association of Western Pennsylvania*, 453 Pa. 60, 311 A.2d 634 (1973), *cert. denied*, 414 U.S. 1131, 94 S.Ct. 870, 38 L.Ed.2d 755 (1974), our Supreme Court stated that:

> within the concept of liberty protected by the Fourteenth Amendment, [there is] the right to engage in any of the common occupations of life. 'The established doctrine ... is that this liberty may not be interfered with, under the guise of protecting the public interest, by legislative action which is arbitrary or without reasonable relation to some purpose within the competency of the state to effect.' ... By the same token, 'a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms.'

*Id.*, 453 Pa. at 72, 311 A.2d at 640 (citations omitted).

However, property rights or interests are not absolute and are held subject to valid police regulation made

for the health and comfort of the people. *Commonwealth v. Barnes & Tucker Company*, 472 Pa. 115, 123, 371 A.2d 461, 465 (1977). We acknowledge both a physician's right to participate in his chosen profession and the Commonwealth's right to exercise its police power, but the degree and manner of regulation must be reasonably necessary to accomplish the statute's intended purpose. *Lawton v. Steele*, 152 U.S. 133, 14 S.Ct. 499, 38 L.Ed. 385 (1894). Since we conclude that Act 6 is rationally related to a legitimate state interest but that the degree and manner may be overbroad, we are not certain that PMS's petition cannot be sustained. Therefore, we must grant in part and deny in part the Commissioner's second preliminary objection.

The next issue we address concerns whether the General Assembly has delegated legislative power in violation of Article II, Section 1 of the Pennsylvania Constitution. PMS alleges improper delegation to federal officials and to a private party, namely Pennsylvania Blue Shield. The Commissioner responds that the General Assembly may incorporate a federal standard into a Pennsylvania statute without violating the Constitution and that authority and discretion may be conferred upon another body to carry out legislative policy.

This Court in *Pennsylvania State Association of Township Supervisors v. Thornburgh*, 45 Pa.Commonwealth Ct. 361, 405 A.2d 614 (1979) (quoting *Chartiers Valley Joint Schools v. Allegheny County Board of School Directors*, 418 Pa. 520, 529, 211 A.2d 487, 492 (1965)), stated that:

'[w]hile the legislature cannot delegate power to make a law, it may where necessary, confer authority and discretion in connection with the execution of the law; it may establish primary standards and impose upon others the duty to carry out the declared legislative policy in accordance with the general provisions of the Act.'.... However, legislation must contain adequate standards which will guide and restrain the exercise of the delegated administrative functions.

*Id.,* 45 Pa.Commonwealth Ct. at 365–66, 405 A.2d at 617 (citation omitted). If the legislation is found to contain the proper guidelines, then delegation to the Commissioner is within the constitutional parameters, but a more extensive record is needed before this determination can be made.

■ With regard to the question of delegation to the federal government, it is clear that the Medicare standard is only used as a basis to determine medical providers' fees.

[E]ven though a state statute making reference to a federal determination involves more than status-finding, it nevertheless is not a rule-making delegation requiring specific guiding standards when (1) the federal determination has a rational relationship to the state law's subject and purpose, and (2) the federal determination deals with a different subject and purpose specially or exclusively within the federal sphere.

*East Suburban Press, Inc. v. Township of Penn Hills,* 40 Pa.Commonwealth Ct. 438, 447, 397 A.2d 1263, 1268 (1979). As we stated in *Pennsylvania Medical Providers Association,* this act attempts to regulate private medical benefits whereas Medicare regulates a federal entitlement program. Using Medicare as a guidepost does not create a rule-making delegation.

■ Further, PMS argues that the federal government has improperly delegated legislative authority to Pennsylvania Blue Shield, a private party, to determine the compensation caps based upon the federal Medicare program. PMS asserts that Section 1797(a) results in a delegation of legislative authority to Pennsylvania Blue Shield by allowing it substantial and essentially non-reviewable discretion in determining reasonable charges for physicians' services. However, PMS's petition does not allege that the power delegated to Blue Shield constitutes the power to make, alter or repeal laws or to make basic policy. Section 1797(a) does not grant legislative power to Blue Shield, but merely grants to Blue Shield the power to assist in determining reasonable charges in formulating the compensation caps. While the legislature cannot delegate the power to make,

alter, or repeal laws, it can delegate the power to determine some fact or state of things to form a basis upon which the law depends. *See Marshall Impeachment Case*, 363 Pa. 326, 69 A.2d 619 (1949); *Pennsylvania Chiropractic Federation.* We conclude there has been no improper delegation of legislative power to Blue Shield and, therefore, that PMS has failed to state a claim that Section 1797(a) violates Article II, Section 1 of the Pennsylvania Constitution.

We next address the Commissioner's two preliminary objections concerning a lack of jurisdiction under the Declaratory Judgments Act (DJA), 42 Pa.C.S. §§ 7531–7541. The Commissioner argues that PMS has failed to join all necessary parties and that no actual justiciable controversy exists.

To settle and afford relief to any person from uncertainty and insecurity with respect to rights, status and legal relations affected by a statute is the stated purpose of the DJA. Section 7540 of the DJA, 42 Pa.C.S. § 7540, provides that "all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." Furthermore, in *Clark, Inc. v. Hamilton Township*, 128 Pa.Commonwealth Ct. 31, 562 A.2d 965 (1989), this Court stated that "declaratory relief is appropriate only where there is an actual controversy." *Id.*, 128 Pa.Commonwealth Ct. at 35, 562 A.2d at 967.

A declaratory judgment to decide future rights will not issue in a case where the alleged breach of the petitioner's rights is merely an anticipated event which may never happen and a petition for declaratory judgment is properly dismissed where the proceeding may prove to be merely academic.... While the subject matter of the dispute giving rise to a request for declaratory relief need not have erupted into a full-fledged battle, petitioner must at least allege facts demonstrating the existence of an active controversy relating to the invasion or threat-

ened invasion of the petitioner's legal rights; there must emerge the 'ripening seeds' of a controversy.

*Id.*, 128 Pa.Commonwealth Ct. at 36, 562 A.2d at 967–68 (citations omitted).

We believe sufficient uncertainty exists with respect to the provisions of Act 6 to meet the threshold jurisdictional requirements of the DJA. Further, we find that the merits of the case can be determined without prejudice to the rights of the insurers. They are not necessary parties. Therefore, the Commissioner's fourth and fifth preliminary objections are overruled.

The final preliminary objection raised by the Commissioner proposes the defense of sovereign immunity. It is well settled that "[s]uits which seek to compel affirmative action on the part of state officials ... are within the rule of immunity; suits which simply seek to restrain state officials from performing affirmative acts are not within the rule of immunity." *Joint Bargaining Committee of the Pennsylvania Social Services Union, Local # 668 v. Commonwealth of Pennsylvania*, 109 Pa.Commonwealth Ct. 11, 23, 530 A.2d 962, 967 (1987), (quoting *Philadelphia Life Insurance Company v. Commonwealth*, 410 Pa. 571, 576, 190 A.2d 111, 114 (1963) (emphasis deleted)). The result sought by PMS would restrain the Commissioner from performing affirmative acts (implementing the provisions of Act 6) and, therefore, the defense of sovereign immunity is inapplicable to this situation. Accordingly, we overrule this preliminary objection.

Based on the foregoing opinion, the preliminary objections of the Commissioner are overruled excepting that portion of No. 2, wherein we hold that Act 6 is rationally related to a legitimate state interest.

PELLEGRINI, J., concurs in the result only.

ORDER

AND NOW, this 11th day of January, 1991, the preliminary objections of Ernest D. Preate, Attorney General of

the Commonwealth of Pennsylvania, are sustained and the Petition for Review is dismissed against him. The preliminary objections of Constance B. Foster, Insurance Commissioner of the Commonwealth of Pennsylvania, are overruled, except as to the portion of preliminary objection No. 2 wherein we conclude that Act 6 is rationally related to a legitimate state interest. The Commissioner is directed to file an Answer to the Petition for Review within twenty (20) days of the entry of this Order.