Richland Education Association, Appellant *v.* Richland School District, Appellee.

Richland School District, Appellant *v.* Richland Education Association, Appellee.

Argued May 7, 1980, before Judges ROGERS, BLATT and MACPHAIL, sitting as a panel of three.

*William K. Eckel,* for Richland Education Association.

*Samuel Rizzo,* with him *Ralph W. Kraft, Kraft, & Rizzo,* for Richland School District.

OPINION BY JUDGE MACPHAIL, August 5, 1980:

The Richland Education Association (Association) filed two grievances against the Richland School District (District) on May 1, 1978. The Association is the exclusive bargaining representative for all employees of the District who are members of the bargaining unit as certified by the Pennsylvania Labor Relations Board (PLRB). Both grievances were denied by the District at all levels of the procedure provided by the collective bargaining agreement (agreement) between the Association and the District and were submitted to binding arbitration. The arbitrator ruled in favor of the Association on both grievances. The District appealed from the arbitrator's decision to the Court of Common Pleas of Cambria County which set aside the arbitrator's decision as to grievance No. 02-78, but sustained the decision of the arbitrator as to grievance No. 03-78. Both parties appealed to this Court. The cases have been consolidated by prior order of this Court. For the sake of clarity, these grievances will be discussed separately.

## Grievance 02-78

Grievance 02-78 stated:

Three employees (teachers) have been hired as full time employees to act as permanent substitutes. They are not receiving contractual wages or benefits, as per the agreement.

The present dispute arises as a result of the resolution adopted on January 18, 1978 by the Richland School Board, which provided as follows:

[t]hat because of the implication of the recent amendments to Pennsylvania's Unemployment Compensation Law, the District employ three preferred substitute teachers effective January 23, 1978, to work each day that school is in session for students according to the adopted or

revised calendar; that one of the preferred substitute teachers hold an elementary certificate and the other two be secondary certificated; that preferred substitute teachers be paid at the rate of $34.00 daily...[1]

The Association argues, and the arbitrator found, that "preferred substitute teachers" fall within the defined bargaining unit. The agreement defines the bargaining unit as follows:

In a subdivision of the employer unit comprised of teachers, guidance counselors, and nurses; and excluding all non-professional employees, supervisors, first level supervisors, and confidential employes as defined in the Act.[2]

The District argues, and the lower court found, that the arbitrator expanded the bargaining unit by including substitutes and, therefore his award is contrary to Section 604 of the Public Employee Relations Act (PERA), Act of July 23, 1970, P.L. 563, 43 P.S. §1101.604[3]

The decision of an arbitrator represents a factual finding as to the intention of the parties as it is expressed in the agreement. Therefore, an arbitrator's award must be upheld if it is supported "by the language of the agreement, its context, and any other indicia of the parties' intention." *Scholastic Technical*

---

[1] The School Board's resolution evidently refers to Section 402.1 of the Act of December 5, 1936, P.L. (1937) 2897, *as amended*, added by Section 5 of the Act of July 6, 1977, P.L. 41, 43 P.S. §802.1, which deals with unemployment compensation benefits based on service for educational institutions.

[2] The definitions are found in the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §1-101 et seq.

[3] Section 604 grants the PLRB exclusive jurisdiction to determine appropriateness of a bargaining unit and sets forth factors to be considered in such a determination.

*Service Employees v. Pennsylvania State University,* 37 Pa. Commonwealth Ct. 622, 391 A.2d 1097 (1978).

In the instant case, the arbitrator held that "preferred substitutes" are not substitutes as defined by Section 1101 of the Public School Code of 1949 (Code), Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §11-1101,[4] but are, in fact, full time professional employees and, therefore, included as teachers within the agreement definition of the bargaining unit.

The arbitrator's finding is supported by the evidence. A "preferred substitute" is a hybrid position created by the Richland School Board. As the arbitrator noted, "[t]his School Board has attempted to devise a unique classification which provides the District the advantage of having available all year full time certified teachers, both elementary and secondary, as full time employees and at the same time permits their exclusion from the bargaining unit." The arbitrator concluded that the agreement contemplated that certified teachers who are full time employees shall be within the definition of the bargaining unit. "Preferred substitutes" are, therefore, within the bargaining unit.

In holding that the arbitrator exceeded his authority by expanding the definition of "teachers" in the bargaining unit, the trial court relied upon our decision in *Richland Education Association v. Pennsylvania Labor Relations Board,* 43 Pa. Commonwealth Ct.

---

[4] Section 1101 of the Code defines "substitute" as follows: any individual who has been employed to perform the duties of a regular professional employe during such period of time as the regular professional employe is absent on sabbatical leave or for other legal cause authorized and approved by the board of school directors or to perform the duties of a temporary professional employe who is absent.

24 P.S. §11-1101.

550, 403 A.2d 1008 (1979), but such reliance is misplaced, In *Richland*, a substitute teacher sought arbitration of a grievance. The District refused to hear the grievance because the substitute was not a member of the bargaining unit. The Association thereupon filed an unfair labor practice charge and the PLRB upheld the District. This Court affirmed the PLRB.

The *Richland* case involved a substitute who was hired on a *day-to-day* basis to fill in for a regular employee who had suffered a serious accident. Our Court stressed, "This substitute is variously characterized as a 'day to day substitute' or a 'temporary substitute.' In any event, he was not a 'regular substitute.'" 403 A.2d 1009. It is thus apparent that there we were dealing with "substitutes" as that term is defined in the Code. To include such persons within the bargaining unit would, indeed, infringe upon the prerogatives of the PLRB. Here, however, while the employees are denominated as "preferred substitutes" by the District, the arbitrator found that they were *in fact* certified teachers employed on a *full time* basis. Therefore, the arbitrator here has not expanded the definition of bargaining unit to include "substitutes" as contended by the District. Rather, the arbitrator has found the employees here to be "teachers" as defined in the agreement. On the basis of past practice, he has interpreted the definition of "teachers" in the bargaining unit as including teachers who are full time employees. He then determined that "preferred substitutes" *are* teachers who are full time employees and, therefore, within the bargaining unit.

Accordingly, the arbitrator has not expanded the definition of bargaining unit to include substitutes as contended by the District. For that reason, there is no conflict with Section 604 of PERA. The PLRB's determination of an appropriate bargaining unit has not been expanded or disturbed and the PLRB's exclusive jurisdiction has not been encroached upon.

## Grievance 03-78

Grievance 03-78 stated as the nature of the alleged grievance:

> Failure to comply with Section XIII in that two suspended (Teachers) employes were not re-called to fill full time employment vacancies. These vacancies were positions as full time substitutes who report to work every day and [sic] be used at the discretion of the District.

Article XIII provides that where an action by the School Board creates a vacancy within the bargaining unit, preference shall be given to suspended employees should the Board choose to fill the vacancy. This Article comports with Section 1125(c) of the Code, 24 P.S. §11-1125(c).[5]

The arbitrator and the trial court held that "preferred substitute" was a newly created position within Article XIII's meaning and that suspended employees should have been given preference in filling these positions.

It is clear that our resolution of the issue raised by grievance 02-78 settles, by implication, the issue raised under grievance 03-78. If "preferred substitutes" are regular, full time employees and within the agreement's definition of the bargaining unit, the School Board has created a new position under Article XIII and suspended employees have priority as to these positions.

Relying upon *Love v. Redstone Township School District*, 375 Pa. 200, 100 A.2d 55 (1953), the District

---

[5] Section 1125(c) provides, in pertinent part, as follows: Suspended professional employes shall be reinstated in the inverse order of their suspension. No new appointment shall be made while there are suspended professional employes available who are properly certified to fill such vacancies.
24 P.S. §11-1125(c).

contends that suspended professional employees need not have been offered the positions as "preferred substitutes." In *Love,* appellant had been hired as a substitute teacher under the definition adopted by the Legislature during World War II, but sought to be classified as a temporary professional employee. The wartime definition of "substitute" provided an exception to the general rule that a temporary professional employee must be hired where a regular professional employee has left a position and will not return. During the war, school districts were allowed to fill permanent vacancies with substitutes; absent the exception, these positions would have to be filled by temporary professional employees.

The District's reliance on *Love* is misplaced. *Love* speaks to a vacancy that occurs due to retirement, absence or leave of a professional employee. In the instant case, the vacancy is one that occurred due to the creation of a new position.

Article XIII clearly defines vacancy as including a "newly appointed position." The District appears to argue that Section 1125(c) of the Code prohibits new appointments rather than the reinstatement of suspended professional employees only where such positions previously were held by a professional employee. We have held, however, that Section 1125(c) is not so limited. For example, a suspended professional employee must be offered a position as instructor of night classes before a new appointment is made. *The Portage Area School District v. Portage Area Education Association,* 28 Pa. Commonwealth Ct. 244, 368 A.2d 864 (1977). Neither the agreement nor case law is contrary to the holding of the arbitrator as affirmed by the trial court.

Thus we hold that when the *School District* adopted its resolution authorizing the employment of "preferred substitutes" it created a new position under

the provisions of Article XIII which then required that suspended employees should be given preference in filling this position.

ORDER

AND Now, this 5th day of August, 1980, the order of the Court of Common Pleas of Cambria County, dated April 17, 1979, is reversed as to Grievance 02-78 and is affirmed as to Grievance 03-78. The award of the arbitrator, dated December 4, 1978 is affirmed.