**SOMERSET AREA SCHOOL DISTRICT, Appellant**

v.

**SOMERSET AREA EDUCATION ASSOCIATION.**

Commonwealth Court of Pennsylvania.

Argued Jan. 31, 2006.

Decided May 8, 2006.

---

William R. Carroll, Somerset, for appellant.

William K. Eckel, Johnstown, for appellee.

BEFORE: SMITH–RIBNER, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge SMITH–RIBNER.

The Somerset Area School District (School District) appeals from an order of the Court of Common Pleas of Somerset County that denied the District's petition to vacate a grievance arbitration award. Arbitrator Thomas K. Goldie (Arbitrator) determined that the School District violated the collective bargaining agreement (CBA) between the Somerset Area Education Association (Association) and the School District by failing to recognize that "long-term substitute teachers" are part of the bargaining unit as established by the Pennsylvania Labor Relations Board (PLRB) and set forth in Article I of the CBA. The School District questions whether the Arbitrator committed an error of law when he failed to distinguish contractual language concerning long-term substitute teachers in this CBA from that in contracts in cases cited by the Association and therefore erred when he determined that the issue was rationally derived from the CBA.

On January 29, 1971, the PLRB certified the Association as the exclusive representative of certain employees of the School District for purposes of collective bargaining for a unit comprised of:

full-time classroom teachers under regular professional employes contract per School Code of Pennsylvania [Public School Code of 1949 (School Code), Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1–101–27–2702], librarians, guidance counselors, home school visitor psychologist, and school nurses; and excluding all non-professional employes, supervisors, first level supervisors, and confidential employes as defined in the Act [Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101.2301].

Joint Ex. 3, PERA–R–772–C; Reproduced Record (R.R.) 103a.

On July 1, 1984, in a Nisi Order of Unit Clarification issued on a joint petition to include various part-time employees, the PLRB clarified the bargaining unit to include "all regular part-time classroom teachers, librarians, guidance counselors, home and school visitors, school psychologists and school nurses." Joint Ex. 4, PERA–U–84–340–W; R.R. 104a. The PLRB indicated that it was including those part-time employees in the unit "who meet the Board's test so as to be regular part-time employes and not casual." *Id.* (citing *School District of Township of Millcreek v. Millcreek Educ. Ass'n.,* 64 Pa.Cmwlth. 389, 440 A.2d 673 (1982)). The 1995 CBA and the CBA effective July 1, 1998 to June 30, 2000 included "Article I—Recognition," providing that "the bargaining unit consists of all full-time and regular part-time classroom teachers," librarians, guidance counselors and so forth. Joint Ex. 1; R.R. 68a. The parties did not agree on a new contract before June 30, 2000, but they agreed to continue operating under the status quo during negotiations. They did so through the 2002–2003 school year.

On June 30, 2003, the Association filed a grievance asserting that the School District was violating the CBA by employing long-term substitute teachers and failing to pay them the salaries and benefits of other teachers. On May 21, 2004, the Arbitrator issued his opinion and award concluding that the long-term substitutes are within the scope of the bargaining unit. He determined that he had jurisdiction over this issue because the matter does not involve a question of unit clarification that must be referred to the PLRB but rather an interpretation of the language of the Article I recognition provision, specifically, the meaning of the phrase "full-time and regular part-time classroom teachers[.]"

On the merits, the Arbitrator noted that in *Millcreek* the Court stated that provisions of the School Code are not dispositive of employee status under the PERA, but it also stated that the distinction in the School Code between permanent teachers and substitute teachers was merely one factor for the PLRB to consider in ascertaining whether the two groups shared a community of interest. The School District argued that Department of Education certification and staffing guidelines should be considered in helping to define long-term substitutes, but the Arbitrator concluded that they refer to eligibility for permanent certification and that the School Code does not recognize long-term substitutes. He quoted the definition of "professional employee" in Section 301(7) of the PERA, 43 P.S. § 1101.301(7):

"Professional employe" means any employe whose work: (i) is predominantly intellectual and varied in character; (ii) requires consistent exercise of discretion and judgment; (iii) requires knowledge of an advanced nature in the field of science or learning customarily acquired by specialized study in an institution of higher learning or its equivalent; and (iv) is of such character that the output or result accomplished cannot be standardized in relation to a given period of time.

■ The Arbitrator indicated that in *Millcreek* the PLRB had established criteria to be used in determining whether long-term substitutes are included in a bargaining unit. In *Millcreek* the school district employed long-term substitute teachers to fill positions of teachers on leaves of absence beyond eighty-nine days. As the Court noted, Section 604 of the PERA, 43 P.S. § 1101.604, provides that the PLRB shall determine the appropriateness of the bargaining unit, taking into account, *inter alia,* an identifiable community of interest and the effects of over-fragmentization.[1] In *Millcreek* the Court affirmed the decision of the PLRB that the long-term substitutes there were properly included in the bargaining unit.

The Arbitrator concluded that the long-term substitutes at issue here perform essentially the same duties as those in *Millcreek:* they provide instruction, grade results, follow daily lesson plans, provide study hall duty, attend in-service days, work the same daily hours and school year and are evaluated on the same basis as full-time permanent teachers. As for the expectancy of continued employment, the long-term substitutes are hired to replace full-time permanent employees for an entire school year or a substantial portion thereof. In construing the phrase "regular part-time classroom teachers," the Arbitrator considered dictionary definitions of the term "regular" as including concepts of being formed, built or arranged according to some established rule, law, principle or type, or being constituted, conducted or done in conformity with established or prescribed usages. He determined that the long-term substitutes shared such commonality of interests with full-time classroom teachers that they must be considered "regular part-time classroom teachers." The award provided that the long-term substitutes were to be covered by applicable salaries, benefits and other terms and conditions of employment beginning with the 2003–2004 school year and that the Arbitrator would retain jurisdiction pending implementation of all aspects of the award.

The School District petitioned the trial court to vacate the award. The trial court first recognized the limited nature of judicial review of the Arbitrator's award pursuant to the "essence test" as it is enunciated in *State System of Higher Education, (Cheyney University) v. State College Univ. Prof'l Ass'n (PSEA–NEA),* 560 Pa. 135, 150, 743 A.2d 405, 413 (1999) (footnotes omitted):

> Pursuant to the essence test as stated today, a reviewing court will conduct a two-prong analysis. First, the court shall determine if the issue as properly defined is within the terms of the collective bargaining agreement. Second, if

---

1. The test enunciated in *Millcreek* includes consideration of whether "a sufficiently strong community of interest exists" with other members of the bargaining unit. Factors considered by the PLRB in *Millcreek* included: are the long-term substitutes required, *inter alia,* to have the same teaching certification as full-time teachers; are they required to work the same hours and academic year; are they required to assume the same teaching assignments and other teacher-related functions; are they required to prepare the same lesson plans, attend parent-teacher conferences and in-service days; and are they evaluated using the same standards and pro-

cedures. *Id.,* 440 A.2d at 674–675. To meet the test, the substitutes must satisfy the criteria for determining whether they possess an expectancy of continued employment. The criteria to be considered include whether the substitute has been employed for a substantial period of time during the semester at issue and whether the substitute has a history of employment for a substantial period in the previous semester or a possibility of employment for a substantial period in the next semester. The criteria were applied to the substitutes at issue, and, as a result, they were included in the bargaining unit.

the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement. That is to say, a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement.

*See also Greene County v. District 2, United Mine Workers of America,* 578 Pa. 347, 852 A.2d 299 (2004) (reiterating limited nature of essence test review).

On the issue of the Arbitrator's jurisdiction, the trial court relied on *West Shore School District v. West Shore Educ. Ass'n,* 102 Pa.Cmwlth. 574, 519 A.2d 552 (1986), where this Court affirmed an arbitrator's decision that long-term substitute teachers were included in a bargaining unit defined as including "teachers" and "senior teachers." The Court indicated that Section 604 of the PERA provides for certification by the PLRB of the bargaining unit and that after certification, it may determine whether a particular employee is a member of the unit. The Court explained: "However, the PLRB does not have exclusive jurisdiction over that latter question. Although an arbitrator may not alter the definition of the bargaining unit, the arbitrator does have jurisdiction to determine whether particular employees are members of the bargaining unit as that unit is

defined." *West Shore School District,* 519 A.2d at 553 (citation omitted).

 The trial court rejected the School District's argument that the use of the term "regular" in the phrase "regular part-time teachers" distinguished this bargaining unit, and it concluded from *West Shore School District* and *Millcreek* that the grievant teachers shared a community of interest with members of the unit, that they work for a substantial period during the semester and that they have an expectancy of continued employment based upon their employment history. As for the complaint that the award was not specific enough with respect to benefits beyond salary that must be provided, the trial court held that this issue could be addressed by the Arbitrator upon the court's release of jurisdiction.[2]

The School District argues that the Arbitrator erred by failing to distinguish contractual language concerning long-term substitutes in this CBA and erred by determining that the issue was rationally derived from the CBA. It points out that the term "long-term substitute" is not defined in the School Code.[3] Moreover, school districts typically categorize substitutes as day-to-day, referring to a person called in on a daily basis when someone is sick or for another reason of short duration, or as long-term, referring to a person who is filling a set position for a given amount of time because a specific absence was planned ahead by a regular teacher. Un-

---

**2.** This Court's review of public employee arbitration awards under the PERA is the "essence test" as described above from *State System of Higher Education.*

**3.** Section 1101, 24 P.S. § 11–1101, in subsection (1) defines "professional employe" as including "those who are certificated as teachers" and in subsection (3) defines "temporary professional employe" as a person employed to perform, for a limited time, duties of a

newly created position or those of a professional employee whose services have been terminated by death, resignation, suspension or removal. Subsection (2) defines "substitute" as any individual who has been employed to perform the duties of a regular professional employee when such employee is absent on sabbatical leave or for other legal cause or to perform the duties of a temporary professional employee who is absent.

der certification and staffing policies and guidelines of the Department of Education, a person who does not have certification may be a substitute but may not be a professional or temporary professional employee.

The School District submits that the 1984 unit clarification order specified that the unit applied to those who were regular part-time employees "and not casual." It asserts that *Millcreek* actually supports the School District's position because that was a case that arose before the PLRB, and deference was given to its expertise to determine community of interest, and because one of the criteria applied was expectancy of continued employment. The School District argues that even though long-term substitutes may have a community of interest with other teachers, there is no expectancy of continued employment because they are not under contract and are filling in until other employees return. In an effort to distinguish other cases in which arbitrators have declared that long-term substitutes are entitled to the benefits of a CBA, the School District suggests that the analysis must rest on the specific language of the recognition clause in each case.

The Association relies upon other cases involving arbitration of the status of substitute teachers. In *Richland Educ. Ass'n v. Richland School District*, 53 Pa.Cmwlth. 367, 418 A.2d 787 (1980), the Court upheld the arbitrator's authority and the determination that "preferred substitute teachers" who worked every day fell within a designated bargaining unit including "teachers." In *Northwest Tri–County Intermediate Unit No. 5 Educ. Ass'n v. Northwest Tri–County Intermediate Unit No. 5*, 77 Pa. Cmwlth. 92, 465 A.2d 89 (1983), the Court reversed the trial court's order vacating an award and held that the arbitrator had jurisdiction to decide whether full-time substitute teachers should be included in the bargaining unit under the recognition clause and that the arbitrator's decision would not be disturbed. *See also Wayne Highlands Educ. Ass'n v. Wayne Highlands School District*, 92 Pa.Cmwlth. 114, 498 A.2d 1375 (1985) (upholding a decision that full-time substitute was within the bargaining unit and directing that she receive preference in hiring). The Association offers, as well, that the Arbitrator had authority to retain jurisdiction pending implementation of the arbitration award, citing *Greater Latrobe Area School District v. Pennsylvania State Educ. Ass'n*, 150 Pa.Cmwlth. 441, 615 A.2d 999 (1992) (holding that reopening of arbitration under retained jurisdiction to afford a remedy under the original award was permissible).

■ With regard to the School District's argument that the issue of substitute teacher inclusion in the bargaining unit is really a question of bargaining unit clarification within the exclusive jurisdiction of the PLRB, the Court observes that this position has been rejected consistently, *see Northwest Tri–County Intermediate Unit No. 5 Educ. Ass'n; Wayne Highlands Educ. Ass'n; West Shore*, and that there is now no legal basis for such a claim. As to the merits, the Court is acutely aware of the deferential nature of essence test judicial review of arbitrator awards under the PERA. *Greene County; Office of Attorney General v. Council 13, American Federation of State, County & Municipal Employees*, 577 Pa. 257, 844 A.2d 1217 (2004); *State System of Higher Education.* The Court would have no legal basis for vacating the award even if it disagreed with the interpretation of Article I of the CBA. *State System of Higher Education.*

■ It certainly cannot be said that the Arbitrator's award may not rationally be derived from the CBA or that it indisputably and genuinely is without foundation in or fails to logically flow from the CBA.

State System of Higher Education. The 1984 unit clarification order by the PLRB stated: "Pursuant to the parties' agreement, the Board Representative will include those part-time employes into the unit who meet the Board's test so as to be regular part-time employes and not casual." Joint Ex. 4, R.R. 104a (citing *Millcreek*). As this language suggests, the relevant distinction is between "regular" and "casual" part-time employees. Although districts typically may distinguish between substitutes who work only on a day-to-day as needed basis, that category of substitutes is not involved here.

Various cases have upheld arbitrator awards where arbitrators have determined that preferred substitutes or full-time substitutes shared a community of interests with regular teachers and met the test for inclusion under *Millcreek*. See *West Shore*; *Wayne Highlands Educ. Ass'n*; *Northwest Tri–County Intermediate Unit No. 5 Educ. Ass'n*; *Richland Educ. Ass'n*. The Court has been presented with no justification in this case for vacating the Arbitrator's award under deferential essence test review. Accordingly, the Court affirms the order of the trial court denying the School District's petition to vacate the award of the Arbitrator.

## *O R D E R*

AND NOW, this 8th day of May, 2006, the order of the Court of Common Pleas of Somerset County is affirmed.