SOMERSET AREA SCHOOL
DISTRICT, Appellant

v.

SOMERSET AREA EDUCATION
ASSOCIATION.

Commonwealth Court of Pennsylvania.

Argued Jan. 31, 2006.

Decided Sept. 25, 2006.

William R. Carroll, Somerset, for appellant.

William K. Eckel, Johnstown, for appellee.

BEFORE: SMITH–RIBNER, Judge, COHN JUBELIRER, Judge and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

The Somerset Area School District (School District) appeals an order of the Court of Common Pleas of Somerset County (trial court) denying the School District's petition to vacate an arbitration award. The arbitrator determined that the School District's refusal to treat three "permanent substitute" teachers as members of the bargaining unit violated the collective bargaining agreement (CBA). Because the CBA limits membership in the bargaining unit to "full-time" and "regular part-time" teachers, the School District contends that the bargaining unit does not include employees who have agreed to remain substitutes "permanent-

---

1. In a companion case, *Somerset Area School District v. Somerset Area Education Association*, 899 A.2d 1170 (Pa.Cmwlth.2006), this Court also affirmed an arbitrator's award that long-term substitute teachers were members of the bargaining unit.

2. The CBA was originally effective for the period of October 4, 1995, through June 30,

ly" and, therefore, the award is not rationally derived from the terms of the CBA.[1]

In 1995, the School District and the Somerset Area Education Association (Association) entered into collective bargaining. Article I of the CBA defines membership of the bargaining unit as including

*all full-time and regular part-time classroom teachers,* librarians, guidance counselors, school psychologists, and school nurses; and excludes all non-professional employees, management level employees, supervisors, first level supervisors, and confidential employees as defined in the Public Employee Relations Act.

1998–2000 CBA, Article I, Reproduced Record at 66a (R.R. ——) (emphasis added).[2] Article I is commonly referred to as the "recognition clause."

At a board meeting on August 12, 2002, the School District created four new "permanent substitute" positions, and on September 9, 2002, three individuals were hired to fill the new positions. They each executed an "Agreement to Provide Services" under which they agreed to report to school each day, for no more than 175 days per school year, to cover a class for any teacher absent on that day. The agreement also specifies that the permanent substitutes are employed on an at-will basis; are not entitled to rights of seniority or tenure; are not temporary professional employees as defined in the Public School Code; and are not eligible to be covered by the CBA or to claim any bene-

---

2000. Although the term of the CBA had expired, the parties agreed to honor the *status quo* pending settlement of a successor agreement, and finally agreed upon a new agreement on March 4, 2005, with execution on August 8, 2005. Petition to Vacate Arbitration Award ¶ 3, R.R. 5a; Association Answer and New Matter ¶ 3, R.R. 18a.

fits or rights thereunder. The permanent substitutes were not guaranteed an assignment for each day they reported to school. However, the School District agreed to compensate the permanent substitutes at a higher *per diem* rate than was paid to other daily substitutes.[3]

The Association filed a grievance, asserting that the School District violated the CBA by failing to treat the three permanent substitutes as members of the bargaining unit; by failing to bargain the issue with the Association; and by failing to pay the three permanent substitutes union "salary and fringe benefits." R.R. 96a–98a. The grievance was submitted to arbitration, and a hearing was held on July 10, 2003.

The arbitrator identified the question as whether the newly created position of permanent substitute teacher fell within the bargaining unit, defined as "all full-time and regular part-time classroom teachers." R.R. 59a–60a. The arbitrator found that the permanent substitutes "are virtual full-time classroom teachers that have similar professional certificates, similar work con-ditions and hours, and are employed for a substantial period of time, differing only with respect to the length of the working year." Arbitration Award of July 10, 2003, at 8 (Award at ——). The arbitrator concluded that "the working conditions and job responsibilities are similar to the daily work of regular classroom teachers. [So] the substitute is an interchange with the classroom teacher when that teacher is absent." Award at 6. Accordingly, the arbitrator sustained the Association's grievance. The School District appealed, and the trial court sustained the award. The School District's appeal to this Court followed.

The School District raises a single issue on appeal.[4] The School District asserts that under the two-pronged "essence test," the arbitration award cannot rationally be derived from the CBA. The School District maintains that "full-time and regular part-time classroom teachers" are terms of art, which stand in stark contrast to the terms used in the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1–101–27–2702[5] and limit

---

3. Compensation was set at $100 per day, as compared to $85 per day for random daily substitutes that were called by the superintendent. They also received a partial payment of medical insurance benefits. Agreement to Provide Services ¶ 2, R.R. 105a, 109a, 113a.

4. The "essence test" is the appropriate standard of review to be employed by an appellate court reviewing an arbitrator's decision. It has been summarized by the Pennsylvania Supreme Court as follows:

   The arbitrator's award must draw its essence from the collective bargaining agreement. Pursuant to the essence test as stated today, a reviewing court will conduct a two-prong analysis. First, the court shall determine if the issue as properly defined is within the terms of the collective bargaining agreement. Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement. That is to say, a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement.

   *State System of Higher Education (Cheyney University) v. State College and University Professional Association (PSEA–NEA)*, 560 Pa. 135, 150, 743 A.2d 405, 413 (1999).

5. The Public School Code states, in relevant part, as follows:

   As used in this article,
   (1) The term "professional employe" shall include those who are certificated as teachers, supervisors, supervising principals, principals, assistant principals, vice-principals, directors of vocational education, dental hygienists, visiting teachers, home and school visitors, school counselors, child nu-

membership in the bargaining unit. Stated otherwise, the School District argues that the arbitrator erred by ignoring the carefully chosen words in the recognition clause of the CBA. Further, the School District argues that the arbitrator erred, as did the trial court, in relying on this Court's precedent that has previously addressed the question of when substitute teachers should be included in a bargaining unit.

We begin with a review of the cases that the arbitrator, and the trial court, held to be dispositive. The first, *School District of Millcreek v. Millcreek Education Association*, 64 Pa.Cmwlth. 389, 440 A.2d 673 (1982), established criteria for determining whether long-term substitutes should be considered members of the bargaining unit. The second, *Richland Education Association v. Richland School District*, 53 Pa.Cmwlth. 367, 418 A.2d 787 (1980), held that "preferred substitutes" who worked each day of the school year were "teachers" for purposes of membership in the bargaining unit.

> trition program specialists, school librarians, school secretaries the selection of whom is on the basis of merit as determined by eligibility lists and school nurses. (2) The term "substitute" shall mean any individual who has been employed to perform the duties of a regular professional employe during such period of time as the regular professional employe is absent on sabbatical leave or for other legal cause authorized and approved by the board of school directors or to perform the duties of a temporary professional employe who is absent. (3) The term "temporary professional employe" shall mean any individual who has been employed to perform, for a limited time, the duties of a newly created position or of a regular professional employe whose services have been terminated by death, resignation, suspension or removal.
> Section 1101 of the Public School Code; 24 P.S. 11–1101.
> Section 1108 of the Public School Code provides that "temporary professional em-

In *Millcreek*, this Court affirmed a decision by the Pennsylvania Labor Relations Board (PLRB) that long-term substitute teachers were members of the bargaining unit defined in the collective bargaining agreement as "teachers, traveling teachers, guidance counselors, librarians, traveling librarian, dental hygienist, speech therapists, and nurses." *Millcreek*, 440 A.2d at 674. The PLRB first considered whether the substitutes shared a "community of interest" with any of the enumerated members of the bargaining unit. The PLRB found that the long-term substitute teachers shared a community of interest with "teachers," reasoning that

> long-term substitute teachers were required to have the same teaching certification for the Department of Education as full-time permanent teachers; they had to work the same daily hours and academic year; they had to assume the same teaching assignments and teacher-related duties....

*Millcreek*, 440 A.2d at 675. Next, the PLRB considered whether the long-term

> ployees" are "viewed in law as full-time employes, and ... enjoy all the rights and privileges of regular full-time employes." 24 P.S. 11–1108(d). After three years of employment, a temporary professional employee qualifies for status as a "professional employee" and may be offered a regular contract of employment. 24 P.S. 11–1108(b)(2), (c)(2). The written agreement between the permanent substitutes and the School District expressly provides that permanent substitutes are not "temporary professional employees."
> The School District contends that "professional employee," "substitute," and "temporary professional employee" have specific meanings that do not apply when different words, "full-time" and "regular part-time classroom teachers" are used. Comparing the terms in the Public School Code with those in the CBA leads to the conclusion, the School District argues, that no substitutes, daily or permanent, are members of the bargaining unit.

substitutes had an "expectancy of continued employment" and found that they did. Because of their community of interests with teachers and their expectation of continued employment, the substitutes were found to be members of the bargaining unit. On appeal, this Court affirmed the PLRB's determination. *Millcreek*, 440 A.2d at 674–76.

In *Richland*, the arbitrator held that "preferred substitutes," hired to work every day of the school year, were members of the bargaining unit. The collective bargaining agreement at issue in *Richland* identified members of the bargaining unit as "teachers, guidance counselors, and nurses," and the word "teacher" had been previously interpreted to mean full-time employees working as teachers. *Richland*, 418 A.2d at 788–790. The arbitrator reasoned that the School Board attempted to devise a unique classification, the "preferred substitute," to provide the District with certified teachers as full time employees and at the same time permit their exclusion from the bargaining unit. He concluded that the agreement contemplated that certified teachers who are full time employees shall be within the definition of the bargaining unit. We affirmed, finding the arbitrator's award to be rationally derived from the contract's use of the word "teacher." *Richland*, 418 A.2d at 788–791.

In considering the School District's petition to vacate the award, the trial court found *Millcreek* and *Richland* to be dispositive even though the contract language considered in *Millcreek* and *Richland* was different from that used in the Somerset CBA. The trial court dismissed the language differences as "immaterial."[6] Trial Court Opinion, 3/28/2005, at 8 (Opinion at ——).

We agree that the *Millcreek* principles should be applied when considering what employees belong in a bargaining unit. The determination is not based upon the employee's title but, instead whether (1) the employee in question shares a "community of interest" with members of the unit; (2) works for a substantial period of time during the school year; and (3) has an expectancy of continued employment. *Id.* In affirming the arbitrator's award, the trial court found the decision that permanent substitutes are within the bargaining unit was rationally derived from an interpretation of the term "full-time classroom teachers" in the collective bargaining agreement.

The task of any arbitrator is to determine the intention of the contracting parties as evidenced by the agreement. The arbitrator's resolution of the contract dispute is to be respected by the judiciary if it can in any rational way be derived from the agreement. *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA)*, 473 Pa. 576, 375 A.2d 1267 (1977). In reviewing the arbitrator's decision, we are mindful of the restriction of the "essence test" which requires us to determine initially if the terms of the CBA encompass the subject matter of the dispute. *State System of Higher Education (Cheyney University) v. State College University Professional Association (PSEA–NEA)*, 560 Pa. 135, 150, 743 A.2d 405, 413

---

6. We do not accept the trial court's premise that language differences are of no moment. The language of a collective bargaining agreement governs the outcome of a contract interpretation dispute. Accordingly, precedent resolving a contract interpretation dispute that arose from different contract language will have limited value unless the precedent establishes general principles for contract interpretation. If this were not the case, arbitration awards would draw their essence from case law rather than from the collective bargaining agreement, an absurd outcome.

(1999). Our inquiry ends once we determine that the arbitrator's interpretation can rationally be derived from the collective bargaining agreement. *Id.*

The District maintains that "permanent substitutes" must be interpreted by referring to the definitions of "professional employee," "substitute," and "temporary professional employee" in Section 1101 of the Public School Code of 1949, 24 P.S. § 11–1101. The District argues that its interpretation of "full-time teacher" and "regular part-time teacher" comports with the Public School Code's requirement that a full-time teacher has a contract to teach 184 days per year for 7.5 hours per day, whereas a regular part-time teacher teaches less than a 7.5 hour day for 184 days per year. Permanent substitutes fit neither description.

Since the terms "substitute" or "substitute teacher" never appear in the CBA, the District maintains that the term "full-time and regular part-time classroom teachers" does not encompass "permanent substitutes" or these new substitute positions. Consequently, there are "absolutely no provisions in the Collective Bargaining Agreement which covers (sic) substitutes," and, accordingly, the arbitrator's decision fails the first prong of the essence test, requiring that the arbitration award be vacated. We disagree.

■ The arbitrator began his analysis by determining whether the position of permanent substitute is within the definition of Article I of the CBA. The arbitrator had authority to interpret the recognition clause in Article I of the CBA, and in so doing, determine whether a teacher employed in the newly-created position of "permanent substitute teacher" is a member of the bargaining unit. The arbitrator is not limited to definitions in the Public School Code when interpreting the CBA. *Millcreek.* Definitions in the Public School Code used for applying that statute are not dispositive when trying to identify the existence of a community of interest between employees in the bargaining unit and those that may or may not be in the bargaining unit. Such definitions are only one factor to be considered. *Millcreek; School District of City of Erie v. Pennsylvania Labor Relations Board,* 832 A.2d 562, 568 (Pa.Cmwlth.2003).

■ The arbitrator reasoned that his responsibility was to determine whether the permanent substitute is a full-time or regular part-time employee or a casual employee. The arbitrator found the certification requirements, working conditions and job duties of the permanent substitutes to be "similar to the classroom teacher referred to in the definition of the professional bargaining unit." Award at 6. Thus, a community of interest was established. The arbitrator next turned to the probability of continued employment, which is the second *Millcreek* factor.

On this point, the arbitrator found the Agreement to Provide Services between the permanent substitutes and the District "contemplates a substantial employment relationship." Award at 7. The arbitrator quoted the Agreement, that states the substitute is bound "to provide services to the District … on a continuous basis" and "that it is very probable that Substitute shall be assigned duties for up to" 175 days. *Id.* The arbitrator found the length of the working year is the only difference between full-time classroom teachers and permanent substitutes; and the substitutes' year (175 days) is over 95% of the full-time teachers' year (184 days); and the District intends to have the substitutes report every day for assignments. Based on this analysis, the arbitrator interpreted "full-time and regular part-time classroom teacher" in the recognition clause to include the newly created position of "per-

manent substitutes," as members of the bargaining unit.

Thus, the arbitrator determined the intent of the parties by viewing the language contained in the CBA along with other indicia of the parties' intention. We conclude that the arbitrator's award was rationally derived from the agreement, and must be upheld.

Accordingly, we affirm the trial court and the arbitrator's award.

Judge SMITH–RIBNER concurs in the result only.

**ORDER**

AND NOW, this 25th day of September, 2006, the order of the Court of Common Pleas of Somerset County dated March 28, 2005, and the award of the arbitrator, in the above captioned matter is hereby affirmed.